293 F.2d 717
 UNITED STATES of America, for the Use of DIXIE PLUMBING SUPPLY COMPANY, and A. E. Barnes, III, Appellants,
v.
James Curtis TAYLOR et al., d/b/a Taylor Construction Company et al., Appellees.
 No. 18800.
 United States Court of Appeals Fifth Circuit.
 July 26, 1961.
 Rehearing Denied August 30, 1961.
 
 Denmark Groover, Jr., George C. Grant, T. Baldwin Martin, Macon, Ga., Ellsworth Hall, Jr., Bloch, Hall, Groover & Hawkins, Martin, Snow, Grant & Napier, Macon, Ga., of counsel, for appellants.
 Wallace Miller, Jr., Miller, Miller & Miller, Macon, Ga., for appellees.
 Before HUTCHESON, RIVES and WISDOM, Circuit Judges.
 RIVES, Circuit Judge.
 
 
 1
 This litigation began as an action under the Miller Act.[1] Taylor Construction Company[2] was the prime contractor for the construction of certain facilities located on Robins Air Force Base, Houston County, Georgia. Taylor wished to subcontract a part of the job to B-S Plumbing and Heating Company,[3] but B-S could not furnish a payment and performance bond. Dixie Plumbing Supply Company,[4] which furnished most of the materials and supplies to B-S, was also interested in B-S securing the subcontract. As the result of extensive negotiations and several conversations, the details of which are in sharp dispute, just before the subcontract was executed, the parties, without the benefit of legal aid, entered into three letter agreements which eventually gave rise to this litigation, and which are here quoted in full:
 
 
 2
 "Exhibit #2.
 "Macon, Georgia
 "April 30, 1959
"Taylor Construction Company
"P. O. Box 3085
"Macon, Georgia
 
 
 3
 "Re: SAC Composite Structures, Contract No. DA-09-133-Eng-3662, Robins Air Force Base, Houston County, Georgia.
 
 
 4
 "Gentlemen:
 
 
 5
 "We request that all checks for our estimates on the above job be made jointly to B-S Plumbing and Heating Company and Dixie Plumbing Supply Company.
 
 
 6
 "B-S Plumbing &
 Heating Co.,
 "By D. H. Ballentine.
 
 
 7
 "Sworn to before me this 1st day of May 1959.
 
 
 8
 "(S.) Merlyn Whiting,
 "Notary Public.
"(Seal)
 
 
 9
 "My Commission Expires Feb. 16, 1962."
 
 
 10
 "Exhibit #3.
 "Macon, Georgia
 "May 1, 1959
"Taylor Construction Company
"P. O. Box 3085
"Macon, Georgia
 
 
 11
 "Re: SAC Composite Structures, Contract No. DA-09-133-Eng-3662, Robins Air Force Base, Houston County, Georgia.
 
 
 12
 "Gentlemen:
 
 
 13
 "Please be advised that we will guarantee the proper disbursement of all monies paid jointly to us and B-S Plumbing and Heating Company, it being understood that this disbursement will involve the sheet metal contractor and the insulation contractor.
 
 
 14
 "In as much as the remainder of materials will be purchased through us and we will receive payment as above described immediately upon payment of estimate from the Corps of Engineers, we hereby relinquish our rights to any claim against you or your bonding company for any materials furnished for the above captioned job.
 
 
 15
 "Dixie Plumbing
 Supply Company,
 "By (S.) A. E. Barnes, III,
 "President.
"Sworn to before me this 1 day of
May 1959.
 "Merlyn Whting (sic),
 "Notary Public.
"(Seal)
"My Commission Expires Feb. 16,
1962."
 "Exhibit #4
 "Macon, Georgia
 "May 1, 1959.
"Taylor Construction Company
"P. O. Box 3085
"Macon, Georgia
 
 
 16
 "Re: SAC Composite Structures, Contract No. DA-09-133-Eng-3662, Robins Air Force Base, Houston County, Georgia.
 
 
 17
 "Gentlemen:
 
 
 18
 "Please be advised that I will guarantee that money for payroll will be made available to B-S Plumbing and Heating Company to complete the job in conformance with the contract between Taylor Construction Company and B-S Plumbing and Heating Company.
 
 
 19
 "In consideration of payroll money being available, it is agreed that B-S Plumbing and Heating Company will be paid their estimate monthly immediately upon receipt of construction check from the Corps of Engineers, and that your check for the B-S Plumbing and Heating Company estimate will be made payable jointly to B-S Plumbing and Heating Company and Dixie Plumbing Supply Company (letter of request will be furnished by B-S Plumbing and Heating Company).
 
 
 20
 "It is understood that the two subcontractors for B-S Plumbing and Heating Company, namely the sheet metal and insulation, will be bonded direct to B-S Plumbing and Heating Company and that all materials with small exceptions will be purchased from Dixie Plumbing Supply Company.
 
 
 21
 "(S.) A. E. Barnes III,
 "(A. E. Barnes III).
"Sworn to before me this 1st day
of May 1959.
 "(S.) Merlyn Whiting,
 N. P.,
"(Seal)
"My Commission Expires Feb. 16,
1962."
 
 
 22
 Taylor and B-S then entered into the subcontract in due and legal form, except that the following section was stricken:
 
 
 23
 "Section VI: The Subcontractor agrees to furnish Performance and Payment Bond in the amount of 100% of the Subcontract, said bond to be paid for by the Subcontractor, and to be furnished within five (5) days of the contract date."
 
 
 24
 Taylor agreed to pay B-S for the performance of its work $321,946.20; "all progress payments to be for 100% of the work completed and materials properly stored on the project site less 10% to be withheld until the work has been accepted in total by the Owners." B-S entered into the performance of the subcontract in May, 1959, and continued until January, 1960. During that period, Taylor paid jointly to B-S and Dixie seven monthly estimates aggregating $247,809.00. The insulation subcontractor of B-S had some $19,000.00 in the job, and had included in the seventh estimate $12,197.60, but had not received any payment, and received none out of that estimate. It then walked off the job.
 
 
 25
 After demand on B-S and Dixie to get the insulation subcontractor back on the job, Taylor refused to pay the next estimate to B-S and Dixie, and, instead, paid the insulation subcontractor out of the monies for that estimate. Dixie and Barnes thereupon notified Taylor that they considered their letter contracts at an end. B-S did not complete the job, and it was taken over and completed by Taylor at a cost far in excess of the unpaid balance on the subcontract with B-S.
 
 
 26
 It is not necessary to trace the pleadings by which the claims of the several parties were presented. The case was tried to a jury. The district court charged the jury in substance:
 
 
 27
 (1) That, under the evidence, Dixie and Barnes had breached their respective letter agreements, Exhibits 3 and 4; that Dixie could not recover from Taylor and its payment bond surety the amount due it for materials and supplies furnished to B-S; and that Barnes could not recover from Taylor any unpaid payroll indebtedness for which Barnes was liable.
 
 
 28
 (2) As to Taylor's recovery of its loss in the completion of the subcontract, the court charged:
 
 
 29
 "* * * I charge you that the breaches of these agreements between Taylor and Dixie are chargeable to Dixie and the breach of these agreements between Taylor and Barnes are chargeable to Barnes, and if you believe that the reasonable and necessary cost to complete the B-S contract amounted to $58,942.08, over and above the amount of that contract, and that such amount, the expenditure of such amount, was brought about and caused by the breaches of the respective contracts of Dixie and Barnes by Dixie and Barnes, then I charge you that Taylor would be entitled to a judgment in the amount of $58,942.08 against Dixie, and to a judgment for that amount or some smaller amount against Barnes, bearing in mind the difference between Exhibit 3 and Exhibit 4, which difference I have already called to your attention, and which I shall call to your attention again now.
 
 
 30
 "Number 3 is the letter agreement signed by Dixie and it says: `Inasmuch as the remainder of materials will be purchased through us,' and then some other matters, `we hereby relinquish our right to any claim against you or your bonding company for any materials furnished for the above captioned job.'
 
 
 31
 "Number 4 exhibit, a letter signed by Mr. A. E. Barnes, III, says: `It is understood' — and then some omissions — `that all materials, with small exceptions, will be purchased from Dixie Plumbing Supply.'
 
 
 32
 "If you do not believe, as contended by Taylor, that the additional reasonable and necessary cost of completing the B-S contract did amount of (sic) $58,942.08 but amounted to some smaller figure, and was due to the aforesaid breaches of contract by Dixie and Barnes, then Taylor would be entitled to a judgment against Dixie and Barnes in such smaller amounts, again bearing in mind the difference of language which I have just called to your attention as to Exhibits 3 and 4.
 
 
 33
 "You will find in favor of Taylor against both Dixie and Barnes in such amount as you find Taylor is entitled to recover against each of them under the evidence and rules of law charged you by the Court."
 
 
 34
 (3) That Taylor was entitled to recover from Dixie and Barnes so much of its claim for supervision as had been substantiated by the evidence.
 
 
 35
 (4) The court submitted the questions of bad faith, punitive damages, and attorneys' fees to the jury as against both Dixie and Barnes.
 
 
 36
 The verdict returned by the jury reads as follows:
 
 
 37
 "* * * We the jury find as follows:
 
 
 38
 "(1) On Dixie's complaint against Taylor and Massachusetts Bonding and Insurance Company, by direction of the Court, we find in favor of the defendants.
 
 
 39
 "(2) With respect to Taylor's claim for $58,942.08 as cost of completion of contract we find for Taylor against Dixie in the amount of $58,942.08 and we find for Taylor against Barnes in the amount of none.
 
 
 40
 "(3) With respect to Taylor's claim for 15% as compensation for supervision of completion of job we find for Taylor against Dixie and Barnes in the amount of $1000.00.
 
 
 41
 "(4) With respect to Taylor's claim for punitive damages we find $9,000.00 against Dixie.
 
 
 42
 "(5) With respect to Taylor's claim for attorney's fees we find $3,000.00 against Dixie."
 
 
 43
 Dixie and Barnes appeal from the judgment entered upon that verdict, and seek review of the district court's directions to the jury.
 
 
 44
 (1). As to the directions which we have numbered (1), supra, to the effect that neither Dixie nor Barnes could recover from Taylor and that Dixie could not recover from Taylor's surety, we agree with the district court. Under the evidence, Taylor did not breach either letter agreement, Exhibit 3 or Exhibit 4, when it paid the insulation subcontractor out of the eighth monthly estimate. Under the evidence, B-S and Dixie were then under obligations to refund to Taylor more than the total amount owing to the insulation subcontractor, because the evidence was uncontradicted that invoices submitted by B-S to Taylor and upon which Taylor made payment jointly to B-S and Dixie were padded to the extent of $22,737.87. By Exhibit 3, Dixie agreed "that we will guarantee the proper disbursement of all monies paid jointly to us and B-S * * *." There can be no dispute that, by the word "guarantee" and by receiving and disbursing the monies jointly with B-S, Dixie became responsible for the conduct of B-S when the more than $22,000 of padding was not refunded to Taylor. True, "proper disbursement" is, in our opinion, an ambiguous term which can give rise to legitimate dispute, but it is not ambiguous enough to permit the retention of the amounts by which invoices were illegally padded. Further, no conceivable meaning of "proper disbursement" could permit the distribution of substantial sums ($650.00 and $439.84) to B-S on an entirely different job, on which it had furnished a payment and performance bond to Taylor, and $1,000.00 to Dixie on another and different job of B-S with which Taylor had no concern. There were other clearly improper disbursements for interest on bank loans and for the purchase or rental of equipment. It may well be also, though we need not stop here to inquire, that some of the amounts included in estimates for materialmen and subcontractors of B-S but distributed to others were clearly improperly distributed. Enough is beyond question to show that Dixie and Barnes had breached their respective letter agreements, Exhibits 3 and 4, and could not recover from Taylor. Under Exhibit 3, Dixie had relinquished its rights to any claim against Taylor or its bonding company for materals furnished. Taylor had never agreed to be responsible to Barnes for making payroll money available to B-S pursuant to Exhibit 4.
 
 
 45
 (2). As to the directions which we have numbered (2), supra, we agree with the district court to the extent that Taylor was entitled to recover such damages as were brought about by the breaches of their letter contracts, Exhibits 3 and 4, by Dixie and Barnes, respectively. We think, however, that the district court permitted the jury to assess an entirely erroneous measure of damages when the court construed, as a matter of law, a number of ambiguous terms and expressions in those letter agreements. In Exhibit 3, the court construed the expression, "inasmuch as the remainder of materials will be purchased through us * * *," as a binding obligation upon Dixie to see that all materials used by B-S on the job were purchased through Dixie. According to Curtis Taylor's testimony that was the intention. According to the testimony of Barnes and of Stroberg, the manager of Dixie, that expression simply recited the consideration moving Dixie to relinquish its rights to a claim against Taylor and its surety. The expression was ambiguous, and could have either meaning.
 
 
 46
 The district court construed Dixie's agreement in Exhibit 3 to "guarantee the proper disbursement" along with its relinquishment of its "rights to any claim against you or your bonding company * * *" as, in effect, requiring Dixie to require the disbursement of all monies in such manner as to pay in full all other expenses of B-S in performing the subcontract before Dixie was entitled to receive anything towards its own material bills. According to Curtis Taylor's testimony that was the intention. According to the testimony of Barnes and of Stroberg, the purpose was to enable Dixie to be paid in full each month immediately upon receipt by Taylor of his check from the Corps of Engineers. The expressions were ambiguous, and could have either meaning.
 
 
 47
 According to Taylor's contention, adopted by the district court, the letter agreement, Exhibit 3, when supplemented by Exhibit 4, was equivalent to, or better than, a payment and performance bond guaranteeing not only the payment for all materials used by B-S, but also the complete performance of the subcontract. Dixie, on the other hand, contended that it had only two obligations; namely, to guarantee the proper disbursement of all monies paid jointly to it and B-S, and to relinquish its rights to a claim against Taylor or its surety. Insofar as it was uncertain or ambiguous, the true meaning of the letter agreement, Exhibit 3, should have been left to the jury.
 
 
 48
 "The general rule is that interpretation of a writing is for the court. When, however, the meaning of a writing is uncertain or ambiguous, and parol evidence is introduced in aid of its interpretation, the question of its meaning should be left to the jury." Williston on Contracts, Revised ed., Sec. 616. See also 3 Corbin on Contracts, Sec. 554; Key Numbered Digest, Contracts, Sec. 352 (2); Pike Rapids Power Co. v. Minneapolis, St. P. & S. S. M. R. Co., 8 Cir., 1938, 99 F.2d 902, 916; Steel v. McCargo, 8 Cir., 1958, 260 F.2d 753, 758.
 
 
 49
 The same principle of law applies to Barnes' letter agreement, Exhibit 4, guaranteeing that money for payroll will be made available to B-S. The district court construed the last paragraph of that agreement as a binding obligation upon Barnes to see that "all materials, with small exceptions, will be purchased from Dixie." The jury could have found that meaning, or it could have found that the paragraph expressed an obligation of B-S as part of the consideration moving to Barnes for his guaranteeing that payroll money would be made available. The question of the true meaning of the provision should have been left to the jury.
 
 
 50
 Like errors infect the court's directions, which we have numbered (3), supra, concerning Taylor's claim for supervision.
 
 
 51
 We agree with the district court that it was entirely proper for Taylor to intend to make a profit on the B-S subcontract, but we think that the district court erred in charging the jury that, "In arriving at your verdict it would not help you to consider what the incentive or reason might have been for either Taylor or B-S or Dixie or Barnes entering into their contracts. It is presumed that every man has a valid reason for entering into a contract, and why the parties entered into the contracts has no bearing in this case."
 
 
 52
 In our opinion, that instruction impinges upon the principle that to "aid in arriving at the true interpretation of contracts: * * * All the attendant and surrounding circumstances may be proved * * *." Ga.Code Ann. § 20-704.
 
 
 53
 As to the instructions which we have numbered (4), supra, submitting to the jury the questions of bad faith, punitive damages and attorneys' fees, we think that, under the evidence contained in the present record, the district court was in error. On these subjects Georgia law is controlling. United States for Use and Benefit of Caldwell Foundry & Machine Co. v. Texas Construction Co., 5 Cir., 1955, 237 F.2d 705. In Georgia, the jury may allow attorneys' fees "if the defendant has acted in bad faith." Williams v. Harris, 1951, 207 Ga. 576, 63 S.E. 2d 386, 390, citing Ga.Code § 20-1404. Punitive damages may be allowed in the cases of torts with aggravating circumstances. Sec. 2002, Title 105, 1933 Code of Ga.Ann.
 
 
 54
 Barnes and Stroberg denied any knowledge of the fact that B-S had padded its estimates. There were suspicious circumstances, such as invoices being submitted on Dixie invoice heads, and some mechanical reproductions for which Dixie had and B-S did not have a machine. Further, Mrs. Ballentine, who kept the books for B-S, testified by way of hearsay that Dixie furnished the blank invoices to enable B-S to collect the 10% retainage, but she admitted that the invoices were given to her by her husband and that she did not know how Mr. Ballentine obtained them, and that she had had no discussion with Barnes, Stroberg, or any other employee of Dixie about padding the estimates. Mr. Ballentine was not called as a witness. In the face of strong denials by Barnes and Stroberg, we do not think that the suspicious circumstances and Mrs. Ballentine's hearsay testimony were sufficient to prove that Dixie knew that B-S had padded its estimates.
 
 
 55
 The other clearly improper disbursements were not proven to be fraudulent or made in bad faith, or under aggravating circumstances, but were more likely the result of mistake, negligence, carelessness, or bad judgment on Dixie's part. The evidence may be different on another trial. On the present record we do not think that the issues of bad faith, punitive damages and attorneys' fees as against Dixie and Barnes[5] should have been submitted to the jury.
 
 
 56
 That part of the judgment holding Taylor and Massachusetts Bonding and Insurance Company not liable to Dixie is affirmed. Those parts of the judgment awarding compensation or damages to Taylor are reversed and the cause is remanded for further proceedings.
 
 
 57
 Affirmed in part and in part reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 40 U.S.C.A. § 270a et seq
 
 
 [2]
 Taylor Construction Company was a partnership composed of James Curtis Taylor and others, and will be referred to as Taylor. Its managing partner will be referred to as Curtis Taylor
 
 
 [3]
 B-S Plumbing and Heating Company was a partnership composed of D. H. Ballentine and others, and will be referred to as B.S. Its managing partner will be referred to as Ballentine
 
 
 [4]
 Dixie Plumbing Supply Company was a corporation, and will be referred to as Dixie. Its president and controlling stockholder, A. E. Barnes, III, will be referred to as Barnes
 
 
 [5]
 As to those issues, the jury found only against Dixie, and in answer to the court's inquiry its foreman stated that it found no liability against Barnes