Jean N. AMMONS, Appellant,

v.

The **FRANKLIN LIFE INSURANCE COMPANY**, Appellee.

No. 21418.

United States Court of Appeals
Fifth Circuit.

June 28, 1965.

M. Roland Nachman, Jr., H. T. Fitzpatrick, Jr., Montgomery, Ala., Steiner, Crum & Baker, Montgomery, Ala., of counsel, for appellant.

William Inge Hill, Montgomery, Ala., Hill, Hill, Stovall & Carter, Montgomery, Ala., of counsel, for appellee.

Before RIVES, WISDOM and BELL, Circuit Judges.

RIVES, Circuit Judge:

On April 8, 1963, The Franklin Life Insurance Company issued an insurance policy on the life of Charles Lester Ammons, aged 35, in the face amount of $100,000. The policy provided for double indemnity in the event "that the death of the insured resulted directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means." The double indemnity provision does not exclude intentional homicide from its coverage. His wife, Jean N. Ammons was named as beneficiary.

Within two months, on May 29, 1963, the insured died from arsenic poisoning. The circumstances were consistent with intentional criminal homicide, but his death remains an unsolved mystery.

The widow's attorney furnished proofs with accompanying death certificate, findings of the coroner, and autopsy reports indicating that the insured's death was due to homicide accomplished by arsenic poisoning. The transmitting letter claimed both the face amount of the policy and the double indemnity benefit. The Company replied, referring to the extensive report of its own investigator and stating that it "must consider the possibility of suicide. Therefore, it is virtually impossible at this point to determine what our liability, if any, may be under this policy, and about the only choice is to await further developments."

The Company filed a bill of interpleader depositing in court the face amount of the policy. Later on the same day, the widow sued for the double indemnity benefit. The court awarded the face amount of the policy to the widow, held that there was no reasonable basis for the Company's alleged fear of double liability or conflicting and vexatious claims, and declined to tax attorneys' fees or costs against the interpleader fund or either of the defendants.

As a defense to the widow's suit for the double indemnity benefit, the Company asserted the following policy provision:

"RISKS NOT ASSUMED: This Accidental Death Benefit shall not be payable if the death of the Insured shall result either directly or indirectly from * * * (9) any poison, gas or fumes, voluntarily or involuntarily, accidentally or otherwise taken, administered, absorbed or inhaled * * *."

On motion, and after the filing of affidavits and counteraffidavits, the court entered summary judgment for the defendant Insurance Company, succinctly stating its basis as follows:

"There is no controversy in this case concerning the fact that Charles Lester Ammons died on May 29, 1963, as a direct result of arsenic poisoning. It is immaterial therefore—in this case—whether the poison was taken voluntarily or involuntarily, accidentally, or otherwise. This Court finds and concludes, therefore, that The Franklin

Life Insurance Company, a Corporation, did not contract to pay the additional sum of $100,000 which the plaintiff claims in this case under the double indemnity provision of the policy for accidental death for the reason that the death of Charles Lester Ammons occurring on May 29, 1963, as a result of poison, was not one of the risks assumed by The Franklin Life Insurance Company, a Corporation, in insurance contract No. 2249274. This Court further finds that there has been no waiver by The Franklin Life Insurance Company, a Corporation, of this provision of the insurance contract. It follows, therefore, that The Franklin Life Insurance Company, a Corporation, is entitled to have its motion for summary judgment granted for the reason that there is no genuine issue as to any material fact in this case and the said insurance company is entitled to a judgment as a matter of law."

On appeal the widow-beneficiary insists that a genuine issue of fact remained as to "whether the parties to this insurance contract intended that the poison exclusion work a forfeiture of these double indemnity proceeds because a murderer, who intentionally inflicted fatal injuries on the insured, chose poison, rather than some other instrument, to accomplish his end."

The widow-beneficiary also urges that there is a genuine issue of fact as to whether the Company waived the defense now relied on by its response to her attorneys' claim for both the face amount of the policy and the double indemnity benefit. Asserting that, at the very least, there is ambiguity in the scope and meaning of the poison exclusion provision, the widow urges that under Alabama law the solution of that ambiguity presents an issue of fact properly reserved to the jury for decision, citing Trinity Universal Insurance Co. v. Wills, 1962, 273 Ala. 648, 143 So.2d 846, 847, and Air Conditioning Engineers v. Small, 1953, 259 Ala. 171, 65 So.2d 698, 703,

704. In the latter case, the Supreme Court of Alabama said:

"We think our cases mean that the court, and not the jury, will analyze and determine the meaning of a contract, whether verbal or written when its terms are clear and certain, and also ascertain whether or not it is ambiguous in the light of its terms, and if it is found to be ambiguous, but not void for uncertainty, its meaning may be clarified by a consideration of the facts and circumstances *aliunde* and *in pais,* and when so it is the province of the jury to ascertain those facts and draw inferences from them which carries to the jury the whole issue upon proper instructions by the court."

The rule in the federal courts is to much the same effect; that is, when the solution of any uncertainty or ambiguity in a writing can be found from facts outside of the writing, such as the circumstances surrounding its execution, some special or local meaning of the words used, some usage, or some practical construction by the parties, the determination of such facts is left to the jury. When, however, the difficulty of interpretation must be solved from the writing alone, it is treated the same as a question of law, with which the judge is better fitted to deal than is the jury. 4 Williston, Contracts § 616, particularly at p. 663 (3d ed. 1960); 3 Corbin, Contracts § 554; United States for the use of Dixie Plumbing Supply Co. v. Taylor, 5 Cir. 1961, 293 F.2d 717, 722.

If there should be any difference between the state and the federal rule, it must be remembered that in the federal courts the right to a jury trial is to be determined as a matter of federal law in diversity as well as other actions. Simler v. Conner, 1963, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691.

In the present case, any difficulty of interpretation of the poison exclusion provision must be solved from the policy alone, and is to be treated as a

question of law. The existence of a difficult or complicated question of law, when there is no issue as to the facts, is not a bar to a summary judgment. Palmer v. Chamberlin, 5 Cir. 1951, 191 F.2d 532, 540, 27 A.L.R. 416.

Actually, we have difficulty in conceiving how the poison exclusion provision of this policy could be couched in more plain, unambiguous, and all-inclusive language. Among the "RISKS NOT ASSUMED," it lists death resulting "directly or indirectly" from "any poison" "voluntarily or involuntarily, accidentally or otherwise taken, administered, absorbed, or inhaled." To meet early decisions following Paul v. Travelers' Insurance Co., 112 N.Y. 472, 20 N.E. 347, 3 L.R.A. 443, 8 Am.St.Rep. 758, the provision was broadened by the inclusive terms "voluntarily or involuntarily, accidentally or otherwise taken, etc." Since the addition of those terms, few if any cases can be found which fail to give effect to the exclusion of death from taking poison, regardless of the manner by which the poison was taken or administered. The cases are collected in 1A Appleman, Insurance Law & Practice, Revised §§ 461, 462, pp. 185–192; see also Price-Williams v. New York Life Ins. Co., 5 Cir. 1939, 101 F.2d 482, 484; 10 Couch, Insurance (2d ed.). §§ 41:470–472.

It is not material that the poison may have been intentionally administered to murder the insured. Death is "accidental" even though it results from the intentional act of another, if the insured is not the aggressor or wrongdoer. Mutual Life Ins. Co. of New York v. Sargent, 5 Cir. 1931, 51 F.2d 4; Aetna Life Ins. Co. v. Beasley, 1961, 272 Ala. 153, 130 So.2d 178, 180–181. No reason appears why the words "accidental or otherwise" in the poison exclusion clause should not include that kind of "accident." An intentional homicide may be included in the double indemnity requirement of "accidental," and may also be included as "accidental" in "RISKS NOT ASSUMED."

The same argument that is made in the present case was answered by the Supreme Court of Mississippi in Kennedy v. New York Life Ins. Co., 1937, 178 Miss. 258, 172 So. 743, 745, concluding as follows:

"It is also true that double liability for the death of the insured caused by the taking of poison, intentionally given to him by another for that purpose, could have been aptly excluded by language other than that used, but nevertheless the words 'voluntary or otherwise' also clearly and aptly express the insurer's purpose so to do, and it had the right to select its own words therefor. In order to give the clause the construction put on it by the appellant, it would be necessary for us, under the guise of construing the policy, to add after the words 'voluntary or otherwise' some such words as 'unless given the insured by another with the intent that it should be taken by him.' So to do would be, not to construe the policy but, to make a new one."

We agree with the district court that the death of the insured as a result of poison was not one of the risks assumed in the double indemnity provisions of the policy.

When the Company wrote that it "must consider the possibility of suicide," its letter showed the necessity "to determine what our liability, *if any*, may be under the policy." (Emphasis supplied.) At that time the face value of the policy had not been paid, and suicide would have been a complete defense. We can see nothing in that letter which would mislead the beneficiary, or would waive any other defense. Certainly, however, that letter cannot operate to create a primary liability and extend the coverage of the policy to a risk not theretofore assumed. Inland Mutual Insurance Co. v. Hightower, 1962, 274 Ala. 52, 145 So.2d 422, 433–434; Odum v.

Penn Mutual Life Ins. Co., 5 Cir. 1961, 288 F.2d 744, 749.

The summary judgment for the defendant is therefore

Affirmed.