**GENERAL DYNAMICS CORPORATION (Convair Division), Plaintiff-Appellee,**

v.

**MIAMI AVIATION CORPORATION, Defendant-Appellant.**

**No. 27294.**

United States Court of Appeals
Fifth Circuit.

Feb. 2, 1970.

Rehearing Denied March 3, 1970.

---

3. See footnote 1, supra.

Kermit G. Kindred, Samuel A. Brodnax, Jr., Batchelor, Brodnax, Guthrie & Kindred, Miami, Fla., for appellant.

Darrey A. Davis, Scott, McCarthy, Steel, Hector & Davis, Miami, Fla., for appellee.

Before RIVES, BELL, and DYER, Circuit Judges.

BELL, Circuit Judge:

This appeal presents a single issue: Did the district court correctly conclude that the construction to be placed upon the words "available to it" as used in a contract was a matter of law for the court to be resolved on motion for a directed verdict, rather than a fact question for the jury?

General Dynamics (Convair Division) brought suit against Miami Aviation, seeking damages in the amount of $125,000. This sum was stipulated as the unpaid balance due under the terms of a written contract. The issue presented arises out of a counterclaim filed by Miami Aviation for damages, alleging breach of contract on the part of Convair. The case was tried to a jury. At the close of the evidence, the district court directed a verdict in favor of Convair on its contract claim and directed a verdict against Miami with respect to its counterclaim. We affirm.

On January 16, 1965, the parties entered into a written contract under which Convair agreed to deliver eight new General Electric fan jet aircraft engines to Miami Aviation in exchange for which Miami agreed to deliver three specified aircraft to Convair. In addition, Miami agreed to use its best efforts to acquire a fourth aircraft and deliver it to Convair within twelve months, or in the alternative to pay Convair the sum of $125,000.

The contract construction question presented by this appeal arises out of the further promise of Convair to furnish Miami " * * * all logs, papers,

technical data and descriptive material *available to it* with respect to * * *" the eight jet engines to be delivered.[1] (emphasis added).

Miami Aviation did not deliver the fourth aircraft and Convair eventually demanded payment of the agreed sum of $125,000 in lieu thereof. Miami answered with the contention that Convair had breached the contract by failing to furnish a set of records known as the "cardex" or "card pack" on the engines.

No records accompanied the engines when they were delivered to Miami. Three weeks after the delivery, Convair forwarded a maintenance manual for the airframe to which the engines were to be mounted and a list of service bulletins. After several requests from Miami for technical data, Convair delivered four blank log books for the engines. The testimony indicated that these blank log books, together with the service bulletin list, was the only technical data in the possession of Convair relating to the delivered engines.

However, it developed that General Electric, the manufacturer of the engines, maintained an operations reporting system designated as Cardex or card pack on each of the engines. The Cardex system consisted of IBM cards covering approximately 700 of the 3500 parts in the respective engines. General Electric's practice was to furnish this Cardex system directly to the ultimate user of its engines, without cost, approximately four to six weeks after they obtained the engine.

Card packs on the eight engines here involved were not in existence on January 6, 1965, when the contract was entered into by the parties. The practice of General Electric was not to make up the card packs until after engines were delivered to their ultimate users, the airlines. The engines had been purchased by Convair for use in an aircraft manufacturing venture which was discontin-

---

1. "Purchaser will furnish to Seller all logs, papers, technical data and descriptive materials available to it with re-

spect to each of the aforesaid eight (8) CJ 805-23B engines."

ued. As Miami Aviation sold each of the eight engines, General Electric proceeded to make up the card packs and delivered them to the airlines or users without cost.

The testimony was that the parties to the contract understood the engines were purchased by Miami Aviation for resale as new engines. Also, at the time the contract was made, none of the representatives of the parties involved in the transaction had heard of the Cardex system and did not know it existed.

Miami contends that in attempting to resell the engines, it discovered that the information that would be contained in the card packs was required before a profitable sale could be negotiated. The time-controlled parts covered by Cardex were being constantly improved and modified while the engine was being manufactured by General Electric. Thus the eight engines did not contain identical parts. Without the information about time-controlled parts for each engine, it was impossible to determine which modifications and improvements had been performed without the prohibitively costly operation of disassembling each engine. Therefore, Miami Aviation argued, without Cardex it was impossible for a prospective purchaser to determine the cost of the modifications that would be required before a particular engine could be placed in service. Thus, the resale process was significantly impaired.

Miami Aviation attempted to obtain card packs for the engines directly from General Electric but General Electric informed Miami that it considered Miami a competitor and would not furnish any information relating to the engines. Miami Aviation then requested Convair to secure the card packs from General Electric for Miami. Convair complied with Miami's request and was notified that General Electric would provide the card packs on a cost basis. Convair relayed this information and told Miami to deal directly with General Electric. This course was not followed and Miami eventually disposed of all eight engines, without card packs, at an average price of $99,137.50 per engine. The minimum price received by General Electric for a similar fan jet engine was $225,000.

The district court concluded that Convair was required to furnish only the information available to it at the time the contract was executed. Because the card packs did not exist at that time, they were not covered by the contract.

Miami Aviation contends that the uncertainty as to the meaning of the words "available to it" as used in the contract presented a question of fact for the jury. It is urged that the district court erred in taking the issue from the jury and deciding it on motion for directed verdict.

The contract provided by specific terms that it would be governed by California law. The district court indicated that under the currently prevailing choice of law rules, California law would control even without the contract provision because the contract was executed in California and was to be performed in that state. The parties agreed with this approach and carefully briefed the California law with regard to whether contract construction is a question for the court or the jury.

■ Nevertheless, it is well settled in this circuit that the right to a jury trial on a contract question is to be determined under federal law in diversity as well as other actions. Ammons v. Franklin, 1965, 348 F.2d 414, 14 A.L.R. 3d 776. The test for contract construction in this circuit was enunciated in Ammons v. Franklin, supra. Judge Rives, speaking for the court, pointed out that when the difficulty of interpretation is to be solved from the writing alone, it is treated the same as a question of law, with which the judge is better fitted to deal than the jury. On the other hand, where the writing is ambiguous or uncertain, the rule is that when the solution of the uncertainty or ambiguity can be found from facts outside the writing, such as the circumstances surrounding its execution, some special

or local meaning of the words used, some usage, or some practical construction by the parties, the determination of such facts is left to the jury. 348 F.2d at 416. See also United States for Use of Dixie Plumbing Supply Co. v. Taylor, 5 Cir., 1961, 293 F.2d 717, 722.

In sum, the position of Miami Aviation, as we understand it, is that this court should examine all of the considerations prompting the parties to enter into this contract and then weigh what the parties would have said in the contract if they had foreseen the subsequent availability of Cardex. We conclude that the district court did not err in holding that the language in question is not so ambiguous or uncertain as to require parol evidence to ascertain its meaning.

We can go so far as to agree with Miami's contention that the words "available to it" covered not only the technical information that Convair had in its possession, but also such information as could be obtained by Convair from other sources. However, the outer limits of this language is restricted to the inclusion of data which Convair could obtain at the time of contracting. The contract did not create a continuing obligation.

Since Convair was not obligated to furnish the subsequently available card packs to Miami under the terms of the contract, it follows that the district court did not err in directing a verdict.

Affirmed.

RIVES, Circuit Judge (dissenting):

With deference I do not agree. When the contract was executed the parties did not know what "logs, papers, technical data and descriptive material" were either in the seller's possession or were available to the seller. Significantly the contract spoke of the future, "will furnish," was written in all-inclusive terms, "all logs, papers, etc.," and used the broader expression "available to it" rather than "in its possession." The "cardex" or "card packs" on the engines were "technical data" and "descriptive material" withou˘ which a prospective purchaser could not determine the cost of modifications necessary before the engines could be placed in service. Without that information the prospective purchaser was buying a "pig in a poke." The card packs were absolutely essential to a sale of the engines at a price advantageous to Miami. General Electric flatly declined to furnish the card packs to Miami, but offered to provide them to Convair on a cost basis. A jury could reasonably have found that the card packs were "available" to Convair. Admittedly they were not available to Miami. I dissented at length from the directed verdict standard adopted by this Court in Boeing v. Shipman, 5th Cir.1969, 411 F.2d 365, 369–370. Even under that standard, however, I think that questions of fact were presented for a jury's determination, and that the district court erred in directing a verdict against Miami.