**ROBBINS TIRE AND RUBBER COMPANY, Inc., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 71-2827.**

United States Court of Appeals, Fifth Circuit.

June 13, 1972.

Rehearing Denied Aug. 24, 1972.

Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., Lynn W. Ross, Jr., Atty., Tax Div., Dept. of Justice, Washington, D. C., Scott P. Crampton, Asst. Atty. Gen., Charles D. Stewart, Asst. U. S. Atty., Birmingham, Ala., Meyer Rothwacks, Ann Belanger, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

C. A. Poellnitz, Florence, Ala., James C. Herndon, Akron, Ohio, for plaintiff-appellee.

Before WISDOM, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The contract interpretation issue in this appeal arose in the context of a tax claim settlement. Finding that only one reasonable meaning may be ascribed to the compromise offer and acceptance agreement of the parties, we reverse the action of the trial court in treating the contract as ambiguous and in submitting the issue of its interpretation to jury resolution.

Robbins Tire & Rubber Company (Taxpayer), an Alabama corporation, chose to file its tax returns on a September 30th fiscal year basis. During its 1942–1963 operations, Taxpayer incurred unpaid liability claims for (1) income, excess profits and other related taxes together with penalties and interest totaling 4,722,202.44 dollars, and (2) excise taxes, and related penalties and interest totaling 5,545,170.07 dollars. In December 1963, settlement conferences were held between representatives of Taxpayer and the Commissioner of Internal Revenue (Commissioner). On March 12, 1964, Taxpayer wrote the following letter to the Birmingham, Alabama District Director:

Re: Robbins Tire & Rubber Company, Inc. Claims for Refund

Dear Sir:

The above named taxpayer has submitted offers in compromise to you for settlement of its tax liabilities to September 30, 1963.

In connection with said offers and as additional consideration, we agree to withdraw all claims for refund filed by this corporation upon the acceptance of said offer and the related offer of Poncet Davis, Sr. If said offers are rejected, this agreement shall be of no effect and, upon rejection, is withdrawn.

It is our intention to waive and withdraw any and all claims which have been made by this corporation together with any and all claims which could be made by us in respect to any of the taxable years covered by the offers in compromise. Without limiting the above offer to withdraw claims for refund, the following specific claims are withdrawn:

| Period | Type Tax | Amount of Claim |
|---|---|---|
| 10–1–50 to 9–30–51 | Income | $ 129,821.44 |
| 10–1–55 to 10–30–56 | " | 361,279.63 |
| 10–1–56 to 10–30–57 | " | 159,997.98 |
| 10–1–57 to 10–30–58 | " | 198,536.00 |
| 10–1–58 to 10–30–59 | " | 267,754.69 |
| 10–1–59 to 10–30–60 | " | 59,770.75 |
| 10–1–60 to 10– 1–61 | " | 32,329.39 |
| | | $1,209,489.88 |

On March 19, 1964, Taxpayer filed a formal offer in compromise, dated September 30, 1963, to proffer (1) 517,782.-16 dollars in settlement of its income, excess profits and related tax liabilities; (2) 423,640.34 dollars in satisfaction of excise taxes, penalties and interest; and (3) an agreement to pay the district director a specified percentage of Taxpayer's future annual income over 25,000 dollars in each of the succeeding nine taxable years. All payments, present and future, were to be subject to the terms of the trust agreement which was in effect between Taxpayer and the district director. Along with the tender of these monetary sums, Taxpayer executed Internal Revenue Department Form 656 entitled "Offer in Compromise". Paragraph 3 of that printed form reads as follows:

3. In making this offer, and as a part consideration thereof, the proponent [Taxpayer] agrees (a) that all payments and other credits heretofore made to the account(s) for the period(s) covered by this offer shall be retained by the United States; and (b) that any and all amounts of money to which the proponent may be entitled under the internal revenue laws, due through overpayments of any tax or other liability, including interest and penalties, made for periods ending prior to or during the calendar year in which this offer is accepted, as are not in excess of the difference between the liability sought to be compromised and the amount herein offered, shall also be retained by the United States. Any such refund received after the filing of this offer will be returned immediately to the office of the District Director.

On May 1, 1964, the Commissioner accepted Taxpayer's offer.

On December 16, 1964, Taxpayer filed its income tax return for the fiscal year ended September 30, 1964. On that 1964 tax return Taxpayer failed to claim certain deductions to which the parties now concede it was entitled. A later controversy about these deductions eventuated in a Tax Court opinion favorable to Taxpayer, which determined that an overpayment had been made on this return in the amount of 139,189.60 dollars. The Tax Court ruled that it had no jurisdiction to determine whether a refund of this overpayment of tax was barred by the terms of the compromise agreement. Taxpayer thereupon brought the present litigation seeking to recover the refund of the overpayment established.

The lower court held that the language of Paragraph 3(b) of Form 656 rendered the offer in compromise ambiguous and therefore refused to grant summary judgment to the United States and permitted Taxpayer to introduce parol evidence of the intentions of its representatives at the time of making the offer. Both parties were also permitted to produce "expert" testimony as to the technical meaning of the above quoted language from Form 656. The court then submitted to a jury the determination of whether the contractual settle-

ment undertaking included a relinquishment of the 1964 overpayment. The jury determined that it did not. Judgment on that verdict in Taxpayer's favor provoked this appeal.

The Commissioner contends that the language of the offer in compromise which it accepted is unambiguous and that the United States was entitled to a directed verdict. In order for an ambiguity to exist in the government's printed form which Taxpayer was required to submit, it would have to be reasonable to read the form as having given Taxpayer two distinct options—either to relinquish to the United States all overpayment claims for the periods *ending prior to the year in which the offer was accepted or to give up any overpayment it might make for the calendar year during which the offer was accepted.* Our decision turns upon whether such an alternative interpretation can be judicially determined to be reasonable. We hold that it cannot, and that the court erred in submitting any issue to a jury in this cause.

Normally the interpretation of an undisputed contractual undertaking is to be resolved by the court as a matter of law. However, where the court determines that the words chosen to form an agreement indicate that reasonable men, situated as the contracting parties were, could reach more than one conclusion as to what the bargain was, determination of the intention of the parties is an issue of fact for the jury, if one has been demanded. Fujimoto v. Rio Grande Pickle Co., 414 F.2d 648 (5th Cir. 1969); Freeman v. Continental Gin Company, 381 F.2d 459 (5th Cir. 1967); Ammons v. Franklin Life Ins. Co., 348 F.2d 414 (5th Cir. 1965); United States v. Taylor, 293 F.2d 717 (5th Cir. 1961).

Even if we were to agree that it would be literally possible to read Paragraph 3(b) as a disjunctive offer by a taxpayer proposing a settlement to forego overpayment claims either (a) for all periods ending prior to the calendar year of acceptance or (b) only for periods ending during that calendar year, assigning such a meaning to the offer of compromise in the case at bar results in a wholly unreasonable construction of its terms under the circumstances present here. Taxpayer offered monetary payments approximating only about 10% of the tax liabilities claimed, based upon inability to pay the whole claim. Prior to the Commissioner's acceptance, Taxpayer had written a letter setting out its willingness to waive and withdraw all prior period overpayment claims, including certain specified prior claims totaling in excess of 1,200,000 dollars. Yet the "alternative" interpretation of its offer in compromise, which offer the Commissioner accepted, might permit Taxpayer to deliberately or inadvertently incur a minimal overpayment later in the year of acceptance and then choose to substitute such single overpayment claim for these much larger prior period claims, or would give the Commissioner the election of renouncing the right to retain the conceded claims and hold a subsequent potentially greater overpayment. To further demonstrate the inherent unreasonableness of adopting such an interpretation, we note that it would be impossible to determine which of the contracting parties would be permitted to choose the "optional" period to be waived and when that choice would have to be made. No such unreasonable interpretation may serve to create ambiguity. Restatement of Contracts § 236(a) (1932); Williston on Contracts § 620 (3rd ed. 1961).

Paragraph 3(b) might be subject to criticism for its inartful use of the word "or", instead of "and" (or the technical catch-all "and/or"), between the prior and present tax periods described. However, the context of the entire document and the circumstances under which the offer was submitted show that the conjunctive meaning is implicit and that any reasonable person in the position of the parties must have so understood it.

Though Taxpayer lays heavy stress on its letter of March 12, 1964, we find that it neither indicates nor compels a contrary conclusion. The only income tax returns which were to be filed in the calendar year in which the offer in compromise was submitted were not due until after the closing of Taxpayer's fiscal year ending September 30, 1964. The statement in the March 12 letter of Taxpayer's intention to waive and withdraw all known refund claims cannot logically be construed to have excluded a claim related to a tax return not yet filed and not then due. Indeed, the language of the offer in compromise can reasonably be construed to merely broaden the intent expressed in the letter to include not only waiver of past overpayments but also to agree to permit the Commissioner to retain any overpayment for an additional period—the calendar year in which the offer was accepted. Since the return due in the 1964 calendar year had not yet been made, much less been made incorrectly, it most surely cannot be seriously contended that the March 12 letter constituted an election to waive only refunds for prior periods as opposed to an election to waive a potential later overpayment of 1964 taxes before any such overpayment could be known.

We do not fault the district court for considering all of the background and circumstances against which the offer in compromise was made and accepted, including the March 12 letter and any other testimony of the contracting parties which established the context of the bargaining. However, since we have determined as a matter of law that no ambiguity existed in the contractual writings, it was error to have received testimony as to the intention of one of the parties, Freeman v. Continental Gin Co., *supra*, or the opinions of "experts" as to the meaning of the offer's wording.

If the Commissioner was not entitled to summary judgment, he most surely was entitled to a directed verdict. We reverse the judgment in favor of Taxpayer and remand the cause to the district court with directions to enter judgment for the United States.

Reversed and remanded.