Beecher NOBLE, Plaintiff-Appellant,

v.

EMPLOYERS INSURANCE OF WAUSAU, Defendant-Appellee.

No. 76–1089.

United States Court of Appeals, Fifth Circuit.

July 15, 1977.

James B. Wells, A. R. Snell, Bossier City, La., for plaintiff-appellant.

Herschel E. Richard, Jr., Shreveport, La., for defendant-appellee.

Before COLEMAN, Circuit Judge, KUNZIG,* Associate Judge, and GEE, Circuit Judge.

GEE, Circuit Judge:

Alleging that an operation at a Veterans Administration Hospital to remove a ruptured disc left him paralyzed about the waist and hips, Beecher Noble brought an action in Louisiana state courts against the surgeon who conducted the operation. The Attorney General of the United States removed the action to the United States District Court pursuant to 38 U.S.C. § 4116(c) (Supp. III 1973), certifying that the defendant surgeon was acting within the scope of his employment in the Department of Medicine and Surgery during Noble's operation. Subsequently, Noble again brought suit in state courts, this time naming the surgeon's malpractice insurance carrier, Employers Insurance of Wausau (hereinafter Wausau), under the Louisiana Direct Action Statute, La.Rev.Stat.Ann. § 22.655 (West, Supp. 1977). Defendant Wausau successfully moved for removal of this second action to federal court and, once there, for dismissal, which was granted by the district court. From both the removal and the dismissal Noble appeals. We affirm.

We look initially to the propriety of the removal order. Unlike the first action, removal here was at the behest of the insurance carrier rather than the Attorney General and thus was bottomed on the authority granted by 28 U.S.C. § 1442(a)(1) (1970). This statute authorizes removal of a civil action or criminal prosecution against "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office . . . ." We have no difficulty concluding, from an examination of the statutes providing for medical services for veterans, that at the time of Noble's operation a surgeon in the V.A. Department of Medicine and Surgery was, if not an "officer of the United States," certainly a "person acting under" such an officer. The statute which authorizes creation of the department places it "under a Chief Medical Director," 38 U.S.C. § 4101(a) (1970), who in turn is appointed by and directly responsible to the Administrator of Veterans' Affairs. 28 U.S.C. § 4103(a)(1) (1970). Physicians within the department are appointed by the administrator, 38 U.S.C. § 4105(a)(1) (1970), and must serve a probationary period during which their performances are reviewed by a board appointed by the administrator. 38 U.S.C. § 4106(b) (1970). The administrator by regulation prescribes working hours and conditions, 38 U.S.C. § 4108(a) (Supp. V 1975), and authorizes the Chief Medical Director to appoint disciplinary boards to hear charges of "inaptitude, inefficiency, or misconduct . . . ." 38 U.S.C. § 4110(a) (1970). Even temporary and part-time appointments are made by, and under conditions set by, the administra-

---

\* Associate Judge of the United States Court of Claims, sitting by designation.

tor. 38 U.S.C.A. § 4114 (Supp.1977). These statutes persuade us that a surgeon within the Department of Medicine and Surgery was subject to the authority of the administrator to the extent that he must have been considered to be "acting under" an officer of the United States.

Removal was proper under § 1442, then, if this suit naming Wausau as the direct-action defendant constitutes an action against the physician himself as a "person acting under" the administrator, within the ambit of the statute. At this point the question of propriety of removal under § 1442[1] coalesces with our inquiry into the propriety of dismissal. This fusion occurs because the district court dismissed on the authority of 38 U.S.C. § 4116(a) (Supp. III 1973), which provides that in instances of damages resulting from the alleged "malpractice or negligence of a physician . . . in furnishing medical care or treatment while in the exercise of such person's duties in or for the Department of Medicine and Surgery" the sole remedy is against the United States, under 28 U.S.C. § 1346(b) (1970), to the exclusion of "any other civil action or proceeding . . . *against such physician*" arising out of the same alleged acts. If, then, this suit by appellant Noble strips down to an action *against the surgeon* within the contemplation of the two federal statutes involved, removal was mandated by 28 U.S.C. § 1442, as was the subsequent dismissal by 38 U.S.C. § 4116.

Noble argues before us that his action, by virtue of the Direct Action Statute, is in fact an action against Wausau, the insurance carrier, rather than against the surgeon himself. Because we believe that the Congress did not intend that the determination of whom the action is "against" should hinge on whether an insurer is monetarily liable or is the named defendant due to the fortuity of a direct action procedure in the law of the forum state, we cannot agree. The "right of direct action" granted the injured person (or his survivors or heirs) by section 22:655 does not alter the nature of the proceeding—one in which the con-

duct to be examined is that of the *insured,* not the *insurer,* who becomes involved only because of his contractual obligations under the contract of insurance. The right to sue the insurer directly "is purely remedial . . . . The insurer herein stands in the shoes of the insured to the extent or limit of its policy . . . ." *Vowell v. Manufacturer's Casualty Ins. Co.,* 229 La. 798, 86 So.2d 909, 914 (1956). Noble seeks to establish that by virtue of the Direct Action Statute he possesses two causes of action arising out of the alleged malpractice during the operation: one against the surgeon, now being pursued in federal court and defended by the Attorney General following removal, and a second which he assertedly may maintain in state court even while the other is pending. But the statute does *not* create two separate causes of action. *Finn v. Employers' Liability Assurance Corp.,* 141 So.2d 852, 864 (La.Ct.App.1962); *Nations v. Morris,* 483 F.2d 577, 588 n. 36 (5th Cir. 1973). By contract, the insured is relieved of monetary liability, to the limits of the policy's coverage, and (typically) of the financial burden of conducting his defense; by statute, the action may be brought naming the insurer alone as nominal defendant without joining the insured tortfeasor. But the culpability in question at trial remains that of the *insured,* whoever is named as defendant in the pleadings. When a plaintiff invokes the direct action procedure, the action proceeds in form against the insurer but in substance against the insured.

Application of this basic truth to the operation of the federal removal statute and "exclusive remedy" statute before us proves the district court wholly correct in its removal and subsequent dismissal. By enacting the removal statute, 28 U.S.C. § 1442, Congress sought "to prevent federal officers or persons acting under their direction from being tried in state courts for acts done within the scope of their federal employment." *Peterson v. Blue Cross/Blue Shield,* 508 F.2d 55, 58 (5th Cir.), *cert. denied,* 422 U.S. 1043, 95 S.Ct. 2657, 45

---

1. And, perforce, of the jurisdiction in the United States District Court to dismiss the action.

L.Ed.2d 694 (1975). The purpose of enacting 38 U.S.C. § 4116 was "to extend the broadest possible protection to V.A. medical personnel concerning tortious liability arising out of the course of their employment and the performance of their professional duties." *Wright v. Doe,* 347 F.Supp. 833, 835 (M.D.Fla.1972). Neither the happenstance that Noble's surgeon obtained malpractice coverage and thus need not have personally paid a judgment within the policy's coverage (or presumably, the expense of defending himself) nor the Louisiana Legislature's determination to enact a Direct Action Statute alter the reality that if removal were denied his culpability would be tried in state courts, contravening the aim of the removal statute, or the actuality that dismissal alone can effectuate the protection Congress sought to provide via the exclusive remedy against the United States.[2] The judgment of the court below is AFFIRMED.

---

2. The District Court for Puerto Rico has held section 1442(a)(1)'s removal privilege unavailable to an insurer of the United States Navy, concluding that the direct action provision of the Insurance Code for the Commonwealth of Puerto Rico created an independent cause of action against the insurer, who was not one of the persons enumerated in section 1442(a)(1) as entitled to its benefits. *McGlynn v. Employers Commercial Union Ins. Co.,* 386 F.Supp. 774, 777 (D.P.R.1974). Believing as we do that the contrary result is correct in this case, we have not examined the Puerto Rican statute for similarities or dissimilarities with section 22:655, and thus neither accept nor reject the *McGlynn* outcome.