Lucas GOAR

v.

COMPANIA PERUANA de VAPORES
et al. Civ. A. No. 79–3414.

United States District Court,
E. D. Louisiana.

March 19, 1981.

Darleen M. Jacobs, New Orleans, La., for plaintiff.

J. Dwight Le Blanc, Jr., of Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants.

Michael Fontenot, of O'Keefe, O'Keefe & Berrigan, New Orleans, La., for intervenor Rockwood Ins. Co.

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on the motion of defendants Compania Peruana de Vapores, S.A. and Standard Steamship Owners' Protection and Indemnity Association (Bermuda) Limited (hereinafter CPV and Standard) to dismiss the jury. For the reasons hereinafter set out, it is the opinion of the Court that the motion should be and it is hereby GRANTED.

Lucas Goar, plaintiff, filed this suit seeking damages for personal injuries allegedly sustained by him on August 30, 1979, as the result of a collision between the SS INCA TUPAC YUPANQUI, owned by CPV, and a dock owned by GATX Terminals Corporation which was located on the Mississippi River near Good Hope, Louisiana. In addition to CPV, Standard and others, Goar, a citizen of the state of Louisiana, named Frederic Towing Company, a Louisiana corporation, as a defendant. Clearly, there was no diversity jurisdiction at the time that suit was filed.

The accident forming the basis of Mr. Goar's maritime personal injury claim resulted in extensive property damage, as well as numerous personal injuries other than Mr. Goar's. All the lawsuits arising from the casualty were transferred to this section of the Court and consolidated. The total number of consolidated lawsuits was approximately seventeen, including that of Goar.

Prior to trial of the consolidated cases, defendant CPV moved to strike any jury claims as against it for the reason that CPV is an agent or instrumentality of a foreign state as defined by 28 U.S.C. § 1603 thereby entitled to non-jury trial pursuant to 28 U.S.C. § 1330. Finding that CPV was such an agency or instrumentality,[1] the court granted that motion as to CPV, the only moving party.

At the time of the granting of CPV's motion and thereafter, the Court indicated that with respect to any claim in the consolidated cases in which jury trial was proper, a jury would be empaneled to hear such claim, the jury to be in the Court's discretion an advisory jury with respect to any non-jury claims.

Just prior to the scheduled trial date, all of the consolidated cases except that of Mr. Goar were compromised. Prior to trial Mr. Goar voluntarily dismissed Frederic Towing Company. The claim proceeded to trial before a jury as against defendants CPV and Standard. Liability was stipulated by the defendants and the jury returned a verdict in the total amount of $580,397.00. Both defendants now move to strike the jury verdict claiming that plaintiff is not entitled to a jury as to its claim against CPV's insurer Standard.

As we previously held, plaintiff's action against CPV is not governed by 28 U.S.C. § 1332 but by 28 U.S.C. § 1330. The Foreign Sovereign Immunities Act of 1976 (P.L. 94–583) deleted those provisions of 28 U.S.C. § 1332 which related to diversity jurisdiction over foreign states (including agencies and instrumentalities thereof) and instead created 28 U.S.C. § 1330 as a basis of jurisdiction over foreign states. (See, Legislative History of P.L. 94–583, 1976 U.S.Code Cong. & Adm.News p. 6604 at 6613.)

Plaintiff's cause of action against CPV is a maritime tort. Pursuant to the Louisiana Direct Action Statute, LRS 22:655, Mr. Goar has named Standard as insurer of CPV as a defendant. It is the position of Goar that, having dismissed Frederic Tow-

---

1. CPV is wholly owned by the sovereign state of Peru, and is not incorporated in any of the United States nor created under the laws of any other country other than Peru. (Affidavit of Sandro Arbulu Doig attached as Exhibit "A" to motion of CPV to strike the jury, Document # 111a, in Consolidated Case 79-3386). See also, 28 U.S.C. § 1603, 1976 U.S.Code Cong. & Adm.News p. 6614.

ing, he has complete diversity as between himself and Standard and is thereby entitled to jury trial as against Standard. We disagree.

■ While dismissal of a non-diverse, non-indispensable party may serve to create complete diversity and thereby sustain jurisdiction, *Anderson v. Moorer*, 372 F.2d 747 (5th Cir. 1967); *Ray v. Bird & Son*, 519 F.2d 1081 (5th Cir. 1975); we do not find that the dismissal of Frederic created diversity jurisdiction in this case. Title 28 U.S.C. § 1332 specifically sets out those instances in which jurisdiction thereunder is present.[2] They do not include the situation here present, that is, a controversy between citizens of different states (It is undisputed that Goar and Standard are citizens of different states.) and in which an agency or instrumentality of a foreign state is an additional party. Therefore, subject matter jurisdiction in this case is exclusively maritime, and there is no Seventh Amendment entitlement to jury trial. *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); *Green v. Ross*, 481 F.2d 102, 103 (5th Cir. 1973), cert. den'd 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973); *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252 (5th Cir. 1975).

However, even assuming for purposes of argument, that there is diversity jurisdiction as between plaintiff and Standard, we are convinced that a jury trial as against Standard would be improper.

■ In a diversity case the right to jury trial is determined by reference to federal and not state law. *Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Simler v. Conner*, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963). Louisiana law holds that a plaintiff cannot be deprived of a jury trial against a public body's liability insurer even when the governmental body, immune from jury trial, is joined as a defendant, *Jones v. City of Kenner*, 338 So.2d 606 (La., 1976), *see also, Thornton v. Moran*, 348 So.2d 79 (La.App., 1st Cir. 1977) *writ ref.* 350 So.2d 900 (1977); *Deville v. Town of Bunkie*, 364 So.2d 1378 (La.App., 3rd Cir. 1978) *writ ref.* 366 So.2d 564 (1979). We feel that federal law would compel a different result.

■ In order to determine whether or not jury trial of an issue is appropriate, the Court must look to the nature of the claim to be tried. In the instant case we are trying a maritime tort case against a foreign sovereign. Clearly Congressional intent is that such a trial should be without a jury as expressly provided by 28 U.S.C. § 1330 following 28 U.S.C. § 2404 with regard to non-jury trial of claims against the United States (See, legislative history of Foreign Sovereign Immunities Act, *supra.*). The 7th Amendment does not provide a right to jury trial on a claim against a sovereign. *Galloway v. United States*, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943); *Mathes v. C. I. R.*, 576 F.2d 70, 71 (5th Cir. 1978).

Pursuant to state law, plaintiffs in some states may join as a defendant the liability insurer of the alleged tort-feasor; however that right does not change the nature of the claim.

The "right of direct action" granted the injured person (or his survivors or heirs) by section 22:655 does not alter the nature of the proceeding—one in which the conduct to be examined is that of the *insured* not the *insurer*, who becomes involved only because of his contractual obligations under the contract of insurance. *Noble v. Employers Insurance of Wausau*, 555 F.2d 1257, 1259 (5th Cir. 1977).

**2.** (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and is between—
(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

Finally, review of the legislative history of the Foreign Sovereign Immunities Act reveals a specific intent by Congress to insure uniformity of treatment for foreign states. Awarding jury trials as against a liability insurer in those cases which fortuitously arise in states which allow a right of direct action would serve only to frustrate the goal of uniform treatment.[3]

■ Accordingly, we hold that plaintiff is not entitled to jury determination of his claim in these proceedings and therefore grant the motion of defendants to strike the jury.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW BY THE COURT

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

Plaintiff Lucas Goar at the time of the aforesaid collision, was employed by Fryoux Tankerman Service as a tankerman and was in the process of supervising the servicing of a barge at the GATX Terminals Corporation. He earned approximately $18,252.00 a year, was born on August 24, 1937, and had a future work life expectancy of approximately 25 years.

As the SS INCA TUPAC YUPANQUI was about to collide with the barge plaintiff was attempting to flee the scene. When the explosion occurred he alleges he was thrown into the air resulting in a hard and forceful landing on his hands and knees and burns to his right arm and elbow. He was taken to East Jefferson Hospital where immediate attention was given to his burns. He returned home. Thereafter, from September 12 to September 16, 1979 he was admitted to the East Jefferson Hospital for a skin grafting operation on the back of his right elbow. This has left him with some scarring but is not to any extent disabling or excessively disfiguring. Plaintiff also alleges that the explosion caused him to experience injury to his right knee and back. While in the hospital he appeared to develop considerable pain in the lower part of his back. His knee was never treated and there is no residual in connection with this injury.

In May of 1980 plaintiff claimed to have a tingling in his left upper extremity and during June of 1980 Dr. David Jarrott performed a cervical discectomy at the C5–C6 and C6–C7 level. On November 20, 1980 Dr. Jarrott performed a bilateral L4–L5 laminotomy and a bilateral discectomy at the L4–L5 level. The injury to the lumbar back will result in some partial permanent disability of the back, estimated to be 10% by Dr. Gernon Brown, and 40% by Dr. Jarrott. The Court is inclined to, and does give more effect and weight to the testimony of Dr. Brown than it does to Dr. Jarrott.

Two psychiatrists, Dr. Marvin S. Miller and Dr. Gene S. Usdin, examined the plaintiff who claimed to have traumatic neurosis and a limitation of his sexual functioning. An analysis of the testimony of both psychiatrists leads to the inescapable conclusion that, although plaintiff is probably suffering from a depression secondary to the events of the accident, this is not a permanent condition and should improve in a relatively short period of time with some psychiatric treatment.

Dr. Miller testified that he had seen plaintiff on the following dates: December 19, 1980, January 5, 1981, January 12, 1981, February 2, 1981. He further stated that he told plaintiff to visit him for treatment on an "as needed" basis, and that his fee for each visit would be $50.00. Thus, based upon past performance it would appear that plaintiff would presently need psychiatric treatment four times each quarter, or 16

**3.** We note also that allowing a jury trial as to the insurance carrier but not the sovereign creates the possibility of conflict between the fact finders. This problem has arisen in Louisiana courts as noted in *Thornton v. Moran*, and *Deville v. Town of Bunkie, supra* and would, should we have found plaintiff to be entitled in part to jury trial, have arisen in this case. The resolution of conflict between judge and jury in Louisiana is left to the courts of appeal which, unlike federal appellate courts, are empowered to make findings of fact.

times a year at an annual cost of $800.00. This and the requirement of plaintiff's need for some medication is the only non-speculative evidence adduced as to future medical expense.

The Court is of the opinion that the accident proximately caused the plaintiff to suffer only the following injuries: burns to his right arm and elbow area; injury to his knee and lower back; traumatic neurosis with depression secondary to the accident. The Court rejects the testimony of Dr. John E. Lindner and is of the opinion that it should have little or no weight whatsoever in assessing the injuries sustained by plaintiff, particularly in the light of other expert testimony. Specifically, the Court is of the opinion, for the reasons outlined by Dr. Gernon Brown, that there is no connection between the plaintiff's injuries to the cervical spine and the accident of August 30, 1979. The Court is further of the opinion that plaintiff should be able to obtain employment earning at least the minimum wage in the not too distant future.

Therefore, the Court concludes that plaintiff sustained the following damages:

| | |
|---|---|
| Past loss of earnings to date of trial | $ 13,877.00 |
| Future loss of earnings | 104,038.00 |
| Physical and/or mental pain and suffering, including physical disability, past, present, and future | 150,000.00 |
| Future medical expenses | 2,000.00 |
| Total | $269,915.00 |

The Clerk is instructed to enter judgment in accordance with this opinion.