**Lucas GOAR, Plaintiff-Appellant,**

v.

**COMPANIA PERUANA de VAPORES, et al., Defendants-Appellees.**

No. 81–3170.

United States Court of Appeals, Fifth Circuit.

Oct. 8, 1982.

Darleen M. Jacobs, New Orleans, La., for Goar.

Chaffe, McCall, Phillips, Toler & Sarpy, J. Dwight LeBlanc, Jr., New Orleans, La., for TUPAC, CPV and Standard.

Before WISDOM, RANDALL and TATE, Circuit Judges.

WISDOM, Circuit Judge:

This case poses a simple question, but a novel one with an involved answer. Does the plaintiff have a right to a jury trial in his direct action against the insurer of a foreign-state-owned shipping company, also a defendant in the case? The district court held that he does not. *Goar v. Compania Peruana de Vapores,* E.D. La. 1981, 510 F.Supp. 737. We affirm.

## I.

On August 30, 1979, the S/S Inca Tupac Yupanqui collided with a dock on the Mississippi River, near Good Hope, Louisiana, causing extensive property damage and numerous personal injuries. The vessel belonged to Compania Peruana de Vapores, S.A. (CPV), a corporation wholly owned by Peru, a foreign sovereign state, of course. It was insured by Standard Steamship Owners' Protection and Indemnity Association (Bermuda) Limited (Standard). The plaintiff, Lucas Goar, was among those injured in the collision. He sued the vessel and CPV for negligence and included Standard as a defendant under the Louisiana direct action statute, La. Rev. Stat. Ann. § 22:655 (West 1978). The complaint also named several other defendants.

The collision resulted in several lawsuits aside from Goar's, and all were consolidated for trial together. Before trial, CPV moved for a nonjury trial on the ground that it is a "foreign state" as defined in 28 U.S.C. § 1603(a)[1] and therefore amenable to trial only under 28 U.S.C. § 1330(a), which establishes jurisdiction "of any *nonjury* civil action against a foreign state".[2] The district court granted the motion, but only with respect to claims against CPV. The court determined that it would empanel a jury to hear any claim in the consolidated cases in which a jury trial was appropriate and that the jury would serve, in the court's discretion, as an advisory jury with respect to other claims.

Shortly before the scheduled trial date, all the consolidated actions except Goar's against CPV and Standard were compromised or dismissed. With Goar the only remaining plaintiff and CPV and Standard the only remaining defendants, the district court noted that it apparently had jurisdiction based on diversity of citizenship, under 28 U.S.C. § 1332(a)(2), which vests the district courts with jurisdiction of civil actions between "citizens of a State and citizens or subjects of a foreign state". Because § 1332(a)(2), unlike § 1330(a), is not restricted to nonjury trials, the court allowed the case to proceed to trial before a jury.[3] CPV stipulated liability for the consequences of the collision, and the jury returned a verdict for Goar of $580,397.00.

CPV and Standard moved to strike the verdict on the ground that Goar had no right to a jury in his case against Standard. The district court granted the motion and entered a verdict of $269,915.00 based on its own findings. Noting its prior holding that CPV is a "foreign state" within the meaning of 28 U.S.C. § 1603(a), the court held that diversity jurisdiction does not obtain in any case in which a "foreign state" is among the defendants and that jurisdiction

---

**1.** 28 U.S.C. § 1603 provides, in pertinent part:
For purposes of this chapter—
(a) A "foreign state" ... includes ... an agency or instrumentality of a foreign state as defined in subsection (b).
(b) An "agency or instrumentality of a foreign state" means any entity—
(1) which is a separate legal person, corporate or otherwise, and
(2) ... a majority of whose shares or other ownership interest is owned by a foreign state ..., and
(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

**2.** 28 U.S.C. § 1330(a) (emphasis added). Section 1330(a) provides in full:
(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

**3.** It is not clear from the record or from the district court's opinion what effect the court's earlier decision to strike the jury as to CPV was intended to have. The opinion states that the claim "proceeded to trial before a jury as against defendants CPV and Standard". 510 F.Supp. at 738. It does not state, however, that the original grant of CPV's motion to strike the jury was ever retracted. In addition, the opinion indicates that in the post-trial motion to strike the jury, only the right to a jury in the claim against Standard was at issue. *Id.* In any event, the district court's ultimate disposition consisted of dismissing the jury and entering judgment based on the court's findings as to both CPV and Standard.

of the action against Standard was therefore exclusively maritime, with no right to a jury trial.[4] The district court also held that, regardless of the statutory basis for jurisdiction, Goar had no right to a jury because his claim is by nature one against a foreign sovereign, for which federal practice does not require a jury.

Goar appeals from the district court's judgment, challenging both parts of its holding.[5]

## II.

Goar argues that jurisdiction of this case is grounded on diversity of citizenship by virtue of 28 U.S.C. § 1332(a). As noted above, § 1332(a)(2) vests the district courts with jurisdiction of civil actions between "citizens of a State and citizens or subjects of a foreign state".[6] Before enactment of the Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94–583, 90 Stat. 2891 (codified in scattered sections of 28 U.S.C.) (FSIA), § 1332(a)(2) also embraced jurisdiction of actions by citizens of a state against foreign states.[7] In the FSIA, however, Congress chose to treat jurisdiction of actions against foreign sovereigns in a uniform and comprehensive manner. Congress removed the language pertaining to foreign sovereigns from § 1332(a) and enacted a new provision, 28 U.S.C. § 1330, which governs cases in which foreign states are defendants. Pub. L. No. 94–583, §§ 2, 3, 90 Stat. 2891, 2891. Jurisdiction under § 1330 is limited to nonjury cases; Congress deter-

---

4. There is generally no right to a jury trial in actions brought under the maritime jurisdiction. This rule applies to cases that, like the present one, see p. 158 *infra*, involve state statutory claims that would have been tried to a jury if brought in state court. *Green v. Ross,* 5 Cir. 1973, 481 F.2d 102, *cert. denied,* 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473. *See* Fla. Stat. Ann. §§ 768.01 .03 (West 1964), *repealed by* 1972 Fla. Laws ch. 72 35, § 2, *replaced by* Fla. Stat. Ann. §§ 768.16–.27 (West Supp. 1981), 1972 Fla. Laws ch. 72–35, § 1; *Railway Express Agency, Inc. v. Garland,* Fla. App. 1972, 269 So.2d 708, *cert. denied,* 1973, 275 So.2d 14.

5. On appeal, Goar does not seem to challenge *the district court's action in striking the jury as* against CPV, although much of his argument, if accepted, would tend to require reversal of the district court on this issue as well. *See* pp. 150 153, *infra.* Since we reject this argument, as it concerns the case against Standard, we note also that to the extent Goar's brief might be interpreted to challenge the order striking the jury as against CPV, we reject the challenge and affirm the district court.

6. The appellant's brief suggests that the provision applicable in this case is not § 1332(a)(2) but § 1332(a)(3), which concerns actions between "citizens of different States and in which citizens or subjects of a foreign state are additional parties". The district court also seems to have considered this the provision at issue and noted that there was no dispute as to whether Goar and Standard are citizens of different states. *See* 510 F.Supp. at 739. It became evident at oral argument, however, that Standard is a foreign corporation, not a citizen of one of the United States, and § 1332(a)(3) is therefore inapplicable by its terms.

The language of § 1332(a)(3) was first enacted with the revision of the judicial code in 1948. Act of June 25, 1948, ch. 646, § 1332(a)(3), 62 Stat. 869, 930. According to Professor Moore, who was a Special Consultant on the Revision Staff, the purpose of the new language was to merge the traditionally separate jurisdictional grounds of "diversity of citizenship" and "alienage". *See* J. Moore, Moore's Judicial Code Commentary ¶ 0.03(25) at 154 (1949). The traditional distinction had previously generated some confusion concerning the existence of federal jurisdiction when a citizen of one of the United States sues a citizen of a different state and a foreign citizen or subject in the same action. *See* 1 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice ¶ 0.75[1.–1] at 709.2 (2d ed.); *Ryan v. Ohmer,* S.D.N.Y. 1916, 233 F. 165, 166–67. Apart from dispelling this confusion, § 1332(a)(3) may also have the effect of retaining federal jurisdiction when there is complete diversity between the United States citizens involved in an action but there are foreign subjects among the parties on both sides. *See Lavan Petroleum Co. v. Underwriters at Lloyds,* S.D.N.Y. 1971, 334 F.Supp. 1069, 1071. But it clearly has no effect where, as here, all defendants are foreign. If § 1332(a)(3) were at issue here, the analysis that requires us to reject jurisdiction under § 1332(a)(2) would yield the same result.

7. Before the amendment, § 1332(a) provided for jurisdiction of actions between:

(2) *citizens of a State, and foreign states or* citizens or subjects thereof; and
(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

Act of June 25, 1948, ch. 646, § 1332(a)(2), 62 Stat. 869, 930.

mined that "[a]ctions tried by a court without jury will tend to promote a uniformity in decision where foreign governments are involved". H.R. Rep. No. 1487, 96th Cong., 2d Sess. 13, *reprinted in* 1976 U.S. Code Cong. & Ad. News 6604, 6611–12 (House Report). The FSIA defined "foreign state" broadly, to include agencies and instrumentalities of foreign states, 28 U.S.C. § 1603(a), and expressly adopted this broad definition in § 1330.

The appellant does not dispute that CPV is a "foreign state", within the meaning of § 1603, and suable under § 1330. He argues, rather, that a corporation owned by a foreign government is both a "foreign state" under § 1330 and a "citizen or subject of a foreign state" under § 1332(a). In addition, he argues that even if § 1332(a) does not provide a basis for jurisdiction of his action against CPV, CPV's presence in the suit should not affect jurisdiction of the action against Standard. We reject both arguments.

The appellant's first argument starts with the reasonable premise that, absent the FSIA, CPV would be a "citizen or subject of a foreign state" within the plain meaning of § 1332(a). But the argument rests also on the more tenuous contention that the FSIA does not affect CPV's status under § 1332(a). The appellant points out that § 1603 by its terms applies only "[f]or purposes of this chapter [chapter 97 of title 28 U.S.C.]" and that § 1332 is in chapter 85. He also notes that § 1330(a) expressly incorporates the definitions of § 1603(a) but § 1332 does not. From this he concludes that while the FSIA made corporations owned by foreign governments suable under § 1330(a), it did not affect their amenability to suit under § 1332(a). CPV, according to the appellant, is suable either under § 1330(a) without a jury or under § 1332(a)

with one. *See Icenogle v. Olympic Airways, S.A.,* D.D.C. 1979, 82 F.R.D. 36, 38. Although we accept the appellant's premise, we cannot agree that the FSIA left CPV's status under § 1332(a) unchanged.

■ Every appellate court that has considered whether § 1330(a) is the sole source of federal jurisdiction in suits against corporations owned by foreign states has concluded that it is. *Rex v. Compania Pervana de Vapores, S.A.,* 3 Cir. 1981, 660 F.2d 61, 65; *Williams v. Shipping Corp. of India,* 4 Cir. 1981, 653 F.2d 875, 881 *cert. denied,* 1982, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691; *Ruggiero v. Compania Peruana de Vapores, S.A.,* 2 Cir. 1981, 639 F.2d 872, 875 (Friendly, J.). *See also Houston v. Murmansk Shipping Co.,* 4 Cir. 1982, 667 F.2d 1151.[8] We agree with the results in these cases. Goar's argument that the words "[f]or purposes of this chapter" in § 1603 prevent that provision from affecting CPV's status under § 1332(a) rests on a "hypertechnical analysis of the legislation". *Williams,* 653 F.2d at 880. As Judge Friendly pointed out in *Ruggiero,* there was no need to include a reference to § 1603 in § 1332(a) because § 1332(a) does not mention foreign states under *any* definition. 639 F.2d at 875 n. 6. Sections 1330 and 1332 must be read together. *Id.; see also* House Report at 24, 1976 U.S. Code Cong. & Ad. News at 6622–23. The reference to § 1603 in § 1330(a) is thus enough to establish that corporations owned by foreign states are considered foreign states for purposes of subject-matter jurisdiction generally.[9]

The legislative history of the FSIA supports our conclusion that § 1330(a) is the exclusive basis for federal court jurisdiction in suits against corporations owned by foreign states. The House Report states that

**8.** Goar relies on several district court cases for support, but only one of these has been neither reversed nor overruled. *Icenogle v. Olympic Airways, S.A.,* D.D.C. 1979, 82 F.R.D. 36, 38. The reaction of commentators to *Icenogle's* interpretation of § 1330(a) has generally been unfavorable. *See, e.g.,* Note, Foreign Sovereign Immunity and the Seventh Amendment: Recognizing the Right to Jury Trial in Suits

Against Foreign States and State-Owned Corporations, 21 Va. J. Int'l L. 521, 536, 543 (1981); 20 Harv. Int'l L.J. 720 (1979).

**9.** By virtue of explicit exceptions to § 1603(a), not all corporations owned by foreign states are considered "foreign states". None of these exceptions is relevant here.

§ 1330's broad grant of jurisdiction in cases involving foreign sovereigns was intended to promote "uniformity in decision, which is desirable since a disparate treatment of cases involving foreign governments may have adverse foreign relations consequences". House Report at 13, 1976 U.S. Code Cong. & Ad. News at 6611. Uniformity of decision was the specific reason for requiring that suits against foreign sovereigns be tried by a court without a jury. *Id.*, 1976 U.S. Code Cong. & Ad. News at 6611–12. By including in § 1330(a) suits against corporations owned by foreign sovereigns, Congress obviously intended to extend the policy of uniformity to these entities. Allowing plaintiffs the option of suing foreign-state-owned corporations before a jury under § 1332(a) would defeat this uniformity and render meaningless the express reference to § 1603 in § 1330(a).

The House Report's discussion of the FSIA amendment to § 1332(a) makes our conclusion inescapable. As noted above, the FSIA removed references to "foreign states" from this provision. The House Report states that this change does "not affect the applicability of section 1332 to entities that are both owned by a foreign state and are also citizens of a state of the United States". *Id.* at 14, 1976 U.S. Code Cong. & Ad. News at 6613. The Report relies on § 1603(b), which excludes from its definition of "agency or instrumentality of a foreign state" those foreign-state-owned entities that are also citizens of states of the United States. *See id.* at 15, 1976 U.S. Code Cong. & Ad. News at 6614. The House Report clearly assumes that the amendment to § 1332(a) makes it inapplicable to those state-owned entities that are agencies or instrumentalities of foreign states as defined in § 1603.

■ Holding, as we do, that CPV is not a "citizen or subject of a foreign state" within the ambit of § 1332(a) does not entirely answer the question before us, however. We must still consider the appellant's argu-

ment that CPV's status does not affect the applicability of § 1332(a) to his suit against Standard. The appellant believes that his demand for a jury trial can be accommodated to the policies of § 1330 by allowing the claim against CPV to proceed before a judge under § 1330(a) and that against Standard before a jury under § 1332(a). The appellees argue that § 1330(a) is the exclusive basis for jurisdiction of the *entire* action whenever a foreign sovereign is among the defendants. The circumstances of this case, however, do not require us to choose between these positions. Because Standard is a defendant only in its capacity as CPV's insurer, the district court would not have had diversity jurisdiction even if Goar had not included CPV as a defendant.

In this case, as in any direct action against an insurer, the basic issues for trial concern the extent of the insured's liability.[10] Accordingly, this Court has held, in a different statutory setting, that a direct action under La. Rev. Stat. Ann. § 22:655 (West 1978) must be considered an action "against" the insured. *Noble v. Employers Insurance of Wausau*, 5 Cir. 1977, 555 F.2d 1257. *Noble* involved the interpretation of 38 U.S.C. § 4116(a), which concerns remedies for negligence and malpractice of physicians working for the Department of Medicine and Surgery of the Veterans Administration. Section 4116(a) provides that the exclusive remedy for such negligence or malpractice is an action against the United States under 28 U.S.C. § 1346(b) and prohibits "any other civil action ... against such physician ...". The Court held that a direct action against the insurer of a Veterans Administration physician was an action "against" the physician, prohibited by § 4116(a). The Court's opinion reasoned that "the culpability in question at trial remains that of the *insured*" and that "the determination of whom the action is 'against' should [not] hinge on whether an insurer is monetarily liable or is the named defendant due to the fortuity of a direct

---

**10.** It is evident from the record that the extent of CPV's liability was the only issue in this case. Counsel for CPV and Standard conceded at oral argument that coverage under the insurance policy was not at issue.

action procedure in the law of the forum state". 555 F.2d at 1259 (emphasis in original).

There are additional reasons, not present in *Noble,* for holding a direct action to be an action "against" the insured within the meaning of § 1330(a). Section 1330 was meant to apply broadly. The legislative history suggests that it was intended to provide a "comprehensive jurisdictional scheme in cases *involving* foreign states". House Report at 13, 1976 U.S. Code Cong. & Ad. News at 6611 (emphasis added). Even if a direct action could not be thought an action "against" the insured, the insured would undoubtedly be "involved". Moreover, "uniformity in . . . treatment of cases involving foreign governments", which trial by a court without a jury is thought to promote, *see id.* at 13, 1976 U.S. Code Cong. & Ad. News at 1611–12, is no less important when a plaintiff happens to sue in a jurisdiction with a direct action statute than when a foreign sovereign recovers an indemnity from its insurer after paying a judgment. Finally, Congress itself has expressed a policy disfavoring the use of the citizenship of an insurer as a basis for diversity jurisdiction in a direct action.

■ In 1964, Congress amended 28 U.S.C. § 1332(c) to provide that an insurer in a direct action be considered a citizen of the state of the insured for purposes of diversity jurisdiction. Pub. L. No. 88–439, § 1, 78 Stat. 445 (1964). The amendment arose from the perception of Congress that, to obtain some of the advantages of a federal jury trial,[11] plaintiffs in jurisdictions with direct action statutes were invoking diversity jurisdiction in suits against insurers although diversity jurisdiction would not obtain in a suit against the insured. S. Rep. No. 1308, 88th Cong., 2d Sess., *reprinted in* 1964 U.S. Code Cong. & Ad. News 2778, 2785 (letter from Deputy Attorney General

Katzenbach to Chairman Celler of the House Judiciary Committee). The Judiciary Committee believed that direct action statutes "do not come within the spirit or intent of the basic purpose of the diversity jurisdiction of the Federal judicial system". *Id.,* 1964 U.S. Code Cong. & Ad. News at 2784. Although the 1964 amendment does not apply to the case before us, it provides additional support for our conclusion that § 1330(a) was intended to apply to a direct action against the insurer of a foreign sovereign, just as to an action against the sovereign itself. The present direct action is no more within the "spirit or intent of the basic purpose of the diversity jurisdiction" than an action against CPV or a direct action in which the insured is a citizen of the same state as the plaintiff.

### III.

■ Regardless of the basis for jurisdiction in this case, we hold that Goar has no right to a jury trial. The right to a jury trial in a diversity case is determined, as the district court held, 510 F.Supp. at 739, by federal, not state, law. *Simler v. Conner,* 1963, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (per curiam); *Byrd v. Blue Ridge Rural Electric Cooperative,* 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953; 9 C. Wright & A. Miller, Federal Practice and Procedure § 2302, at 24 (1971). This rule operates not only to require a jury trial when state law would deny one, as in *Byrd* and *Simler,* but it also requires trial of certain issues by a judge when state law might allow a jury trial. Thus, in *Herron v. Southern Pacific Co.,* 1931, 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857, a negligence case, the Supreme Court upheld a directed verdict for the defendant on the issue of contributory negligence, although the state constitution provided that this defense "shall, at all times, be left to the jury".[12] *See also General Dynamics*

---

**11.** In Louisiana, one of the two original direct action states, appellate courts are permitted to reopen factual findings made by a jury. Louisiana plaintiffs who were able to sue in federal court by virtue of the direct action statute found the deference accorded jury verdicts in federal courts preferable. S. Rep. No. 1308,

88th Cong., 2d Sess., *reprinted in* 1964 U.S. Code Cong. & Ad. News 2778, 2785.

**12.** 283 U.S. at 92, 51 S.Ct. at 383, 75 L.Ed. at 859 (*quoting* Ariz. Const., § 5, art. 18).

*Herron* was decided in 1931, several years before *Erie R.R. Co. v. Tompkins,* 1938, 304

*Corp. v. Miami Aviation Corp.*, 5 Cir. 1970, 421 F.2d 416, 418; *Ammons v. Franklin Life Ins. Co.*, 5 Cir. 1965, 348 F.2d 414; *Humble Oil & Refining Co. v. Sun Oil Co.*, 5 Cir. 1951, 191 F.2d 705, *cert. denied*, 1952, 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 687; *Curry v. Pyramid Life Ins. Co.*, 8 Cir. 1959, 271 F.2d 1, *cert. denied*, 1960, 361 U.S. 933, 80 S.Ct. 373, 4 L.Ed.2d 355; 9 *Wright & Miller*, § 2303, at 28, *supra.*

▮ The Louisiana rule allowing a jury trial against the insurer of a state agency or political subdivision that cannot be sued before a jury, *Jones v. City of Kenner*, La. 1976, 338 So.2d 606, therefore does not govern this case. Nor does it help to argue, as the appellant does, that under Louisiana law the unavailability of a jury trial against a sovereign is a "personal immunity" of the sovereign, which cannot be invoked by its insurer. That the question of the right to a jury trial might be characterized in some states as a question of personal immunity does not affect its essential nature or the requirement that it be determined according to federal law. We therefore rely on federal practice. Rule 38(a), Fed. R. Civ. P., preserves "[t]he right of trial by jury as declared by the Seventh Amendment or as given by a statute of the United States". Since no federal statute confers a right to a jury in this case, we consider the seventh amendment. And we conclude that the seventh amendment does not require a jury trial in a direct action against the insurer of a corporation owned by a foreign state.

The seventh amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . .". The restriction to "suits at common law" refers to the common law of England at the time the seventh amendment was adopted, in 1791. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2302, at 14 (1971). The scope of the right preserved is thus governed by a historical test, which requires jury trial only of issues that, viewed in context, would have been tried by a jury in 1791. *Id.* at 15; 5 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice ¶ 38.08[5] at 38–48 (2d ed.); James, Right to a Jury Trial in Civil Actions, 72 Yale L.J. 655, 655–63 (1963). Applying different variations of this test, the three Circuits that have considered whether 28 U.S.C. § 1330(a) is the sole basis for jurisdiction in a suit against a corporation owned by a foreign sovereign have held that the seventh amendment does not require a jury in such a case. *Ruggiero*, 639 F.2d at 878–81; *Rex*, 660 F.2d at 65–69; *Williams*, 653 F.2d at 881–83.[13] The Second and Fourth Circuits reasoned that since English law in 1791 did not allow *any* actions, with or without a jury, against a foreign sovereign or its instrumentalities, the seventh amendment is inapplicable.[14] We find this reasoning persuasive and find, also, that it renders the seventh amendment

U.S. 64, 58 S.Ct. 817, 83 L.Ed. 1188, made state substantive decisional law generally binding on federal courts in diversity cases. As the Supreme Court pointed out in *Byrd,* however, *Erie* did not affect the continuing vitality of *Herron,* because *Herron* did not rely on *Swift v. Tyson,* 1842, 41 U.S. (6 Pet.) 1, 10 L.Ed. 865, which *Erie* overruled. *Swift* and *Erie,* unlike *Herron,* concerned state decisional law rather than constitutional or statutory law. 356 U.S. 539, 78 S.Ct. 901, 2 L.Ed.2d 963. The *Byrd* Court's heavy reliance on *Herron* itself establishes that it continues to be the law.

13. Neither the Supreme Court nor the Court of Appeals of any Circuit other than these three has ever considered whether the seventh amendment requires a jury in a suit against a foreign sovereign. Before the 1940's, sovereigns were accorded absolute immunity in federal courts, and the issue of a right to a jury

trial thus had no occasion to arise in any court. Between the 1940's and the enactment of the FSIA, the issue was apparently not litigated. See 5 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice ¶ 38.31.1[2] at 38–248 (2d ed.).

14. The Third Circuit in *Rex* reached the same conclusion by a slightly different route. It allowed that the seventh amendment might require jury trial of actions not in existence in 1791, if they are in nature actions at common law. 660 F.2d at 66. The Court then traced the history of sovereign immunity and determined that actions against foreign sovereigns are by nature not actions at common law. *Id.* at 67–68. As is evident from our discussion in the text, *see* pp. 420–421, *infra,* the Third Circuit's analysis does not differ significantly from our own.

inapplicable in a direct action against the insurer of a corporation owned by a foreign sovereign.

The available evidence persuades us that the common law in 1791 did not recognize actions against foreign sovereigns. The immunity of the sovereign in its own courts was established at least as early as the reign of Edward I (1272–1307). *See* 1 F. Pollock & F. Maitland, History of English Law 516 (2d ed. 1959). Our research has led us to no English cases earlier than the nineteenth century that considered whether a similar immunity extended to foreign sovereigns. But several nineteenth-century cases held foreign sovereigns immune, treating the immunity as one with a long history. *See, e.g., De Haber v. The Queen of Portugal,* 1851, 17 Q.B. 171, 117 Eng. Rep. 1246; *The Duke of Brunswick v. The King of Hanover,* M.R. 1844, 6 Beav. 1, 49 Eng. Rep. 724, *aff'd,* 1848, 2 H.L.C. 1, 9 Eng. Rep. 993. *See also* The "Prins Frederik", Adm. 1820, 2 Dods. 451, 484, 165 Eng. Rep. 1543, 1554. And the immunity extended to causes of action arising from a sovereign's commercial activities. Le Parlement Belge, 1878, 5 P.D. 197. The absence of earlier cases on the point does not indicate that before the nineteenth century foreign sovereigns were suable at common law: the immunity may have been thought too fundamental to be worthy of litigation. Blackstone noted that the personal immunity of ambassadors had hardly been mentioned in the courts before the reign of Queen Anne. 1 W. Blackstone, Commentaries 254–55. Yet this immunity, which was considered to derive from the immunity of the sovereigns represented, *id.* at 253, was so fundamental that in 1708 Parliament enacted criminal penalties for service of certain types of process on ambassadors. *See* An Act for preserving the Privileges of Ambassadors, and other publick Ministers of Foreign Princes and States, 7 Ann. ch. 12. This statute was not thought to create new immunities but only to enforce ones previously recognized at common law. *See Triquet v. Bath,* K.B. 1764, 3 Burr. 1478, 1 W. Black. 471, 96 Eng. Rep. 273 (per curiam); 4 W. Blackstone, Commentaries 70.

American courts have also traditionally recognized the immunity of foreign sovereigns. Before the Constitution was adopted, the courts of a state would not entertain suits by its citizens against other states, which were considered independent sovereigns. *See Nathan v. Virginia, Pa. C. P., Philadelphia County* 1781, 1 U.S. (1 Dall.) 77, 1 L.Ed. 44.[15] The Supreme Court, almost since its establishment, has held foreign sovereigns immune from suit. *The*

---

**15.** The Articles of Confederation, in effect at the time, did not purport to confer on the states any immunity from suit by a citizen of another state. *Cf.* U.S. Const. amend. XI (excluding from jurisdiction of federal courts suits against states by citizens of other states). The immunity invoked in *Nathan* was therefore undoubtedly recognized at common law.

When the Constitution was adopted in 1789, article III, § 2 vested the Supreme Court with original jurisdiction of suits "between a State and Citizens of another State", and the Supreme Court interpreted this language to make the states amenable to suit in federal court. *Chisholm v. Georgia,* 1793, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440. The eleventh amendment subsequently made the states immune to suit in the federal courts. Scholars have generally thought that *Chisholm* was wrongly decided and that the eleventh amendment restored the original intent of the Framers. *See Edelman v. Jordan,* 1974, 415 U.S. 651, 660, 94 S.Ct. 1347, 1354, 39 L.Ed.2d 662, 671 (quoting 1 C. Warren, The Supreme Court in United States History

91, (Rev. ed. 1937)). Although it has been suggested that the intent of the framers is unclear, *see* Field, The Eleventh Amendment and Other Sovereign Immunity Doctrines: Part One, 126 U. Pa. L. Rev. 515, 527–36 (1978), it is reasonably clear that before the Constitution was adopted the immunity of foreign states was considered fundamental. In the Virginia Debates, James Madison stated that "[i]t is not in the power of individuals to call any state into court". 3 The Debates in the Several State Conventions on the Adoption of the Federal Constitution 533 (J. Elliot ed. 1836). John Marshall said that "[i]t is not rational to suppose that the sovereign power should be dragged before a court". *Id.* at 555. George Mason considered the abrogation of sovereign immunity "disgraceful" and a "mortification". *Id.* at 527. And Alexander Hamilton wrote: "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent.*" The Federalist No. 81, at 511 (A. Hamilton) (B. Wright ed. 1961) (emphasis in original).

*Schooner Exchange v. M'Faddon,* 1812, 11 U.S. (7 Cranch) 116, 3 L.Ed. 287; *United States v. Peters,* 1795, 3 U.S. (3 Dall.) 121, 1 L.Ed. 535. This immunity has extended, as in England, to sovereigns engaged in commercial activities. *Berizzi Brothers Co. v. S.S. Pesaro,* 1926, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088. Only in the 1940's did courts in this country begin to entertain suits against foreign sovereigns, and then only if the liability in question arose from the sovereign's commercial activities and the State Department considered that disallowing immunity would have no adverse consequences for foreign relations. *Republic of Mexico v. Hoffman,* 1945, 324 U.S. 30, 65 S.Ct. 530, 89 L.Ed. 729; *Ex parte Republic of Peru,* 1943, 318 U.S. 578, 589, 63 S.Ct. 793, 800, 87 L.Ed. 1014, 1021; L. Henkin, Foreign Affairs and the Constitution 56–59 (1972). Through the early 1970's, courts continued to apply the "restrictive theory" of sovereign immunity, allowing suits on claims arising from a sovereign's commercial activities and relying generally on executive statements of policy, though sometimes acting without benefit of the State Department's views in a particular case. *See Ruggiero,* 639 F.2d at 878–79. Today courts apply restrictive sovereign immunity under a legislative mandate, as Congress has codified the principle in the FSIA, thereby removing immunity determinations from the executive branch. *See* House Report at 7, 1976 U.S. Code Cong. & Ad. News at 6605–06.

■ It is thus clear that suits against commercial entities controlled by foreign sovereigns have been allowed only within the last half-century, and only by operation of executive or legislative policy. *See Rex,* 660 F.2d at 68. No principle of common law, ancient or modern, ever allowed actions against foreign sovereigns or their instrumentalities. Since actions against foreign sovereigns—with a jury or otherwise—did not exist in 1791, we must agree with the district court and with the other courts of appeals that have considered the

question that the seventh amendment does not require a jury in a suit against a corporation owned by a foreign sovereign.

This analysis, as Judge Friendly pointed out in *Ruggiero,* 639 F.2d at 879, draws strong support from cases involving jury demands in suits against the United States. The Supreme Court has held that the seventh amendment does not apply to suits against the government in the Court of Claims, because these "are not suits at common law within its true meaning". *McElrath v. United States,* 1880, 102 U.S. (12 Otto) 426, 439, 26 L.Ed. 189, 192. *See also Lehman v. Nakshian,* 1981, 453 U.S. 156, 162 & n. 9, 101 S.Ct. 2698, 2702 & n. 9, 69 L.Ed.2d 548, 553–54 & n. 9; *Galloway v. United States,* 1943, 319 U.S. 372, 388, 63 S.Ct. 1077, 1086, 87 L.Ed. 1458, 1469. And this Court has reasoned that "[s]ince there was no right of action at common law against a sovereign, enforceable by jury or otherwise, there is no constitutional right to a jury trial in a suit against the United States". *Mathes v. Commissioner,* 5 Cir. 1978, 576 F.2d 70, 71, *cert. denied,* 1979, 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459. There are, of course, differences between suits against the United States and those against foreign sovereigns. The immunity of a sovereign in its own courts rests on the "logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends". *Kawananakoa v. Polyblank,* 1907, 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834, 836 (Holmes, J.); *see also* 1 W. Blackstone, Commentaries 242. Clearly, this particular ground does not support the immunity of foreign sovereigns. When the United States allows an action against itself it consents to suit. *See McElrath.* When the United States allows a private suit against a foreign sovereign, the suit is not justified by the consent of the defendant. Nevertheless, as Judge Friendly has pointed out, these differences do not affect the seventh amendment question. *Ruggiero,* 639 F.2d at 880. What matters is that suits against foreign states were as unknown to

the common law in 1791 as were suits against the United States.

■ Our holding does not rest on the assumption that the seventh amendment is inapplicable to all causes of action that were unrecognized at common law in 1791. The historical test we apply is flexible and may require a jury in a new cause of action, not in existence in 1791, if it involves rights and remedies of the sort traditionally enforced in an action at law or if its nearest historical analogue is an action at common law. *FDIC v. New London Enterprises,* 5 Cir. 1980, 619 F.2d 1099; *Cox v. C. H. Masland & Sons, Inc.,* 5 Cir. 1979, 607 F.2d 138. *See also Pernell v. Southall Realty,* 1974, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198; *Curtis v. Loether,* 1974, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260; 9 C. Wright & A. Miller, Federal Practice and Procedure § 2302 at 16 (1971); 5 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice ¶ 38.-11[7] (2d ed.). But this flexible approach does not require a jury here. The cases that have required jury trials for new causes of action have involved legislative enhancement or creation of rights and duties in circumstances where the common law enforced similar rights and duties. *See Pernell,* 416 U.S. at 370–76, 94 S.Ct. at 1727–30, 40 L.Ed.2d at 206–08; *Curtis,* 415 U.S. at 195, 94 S.Ct. at 1008, 39 L.Ed.2d at 267. They did not involve removal or modification of blanket immunity, which creates enforceable rights and duties in circumstances where none existed before. *See Ruggiero,* 639 F.2d at 881. In 1791 there was simply *no* analogue, of the sort described, to a negligence action against a foreign sovereign.[16]

The seventh amendment is no more applicable to a direct action against the insurer of a corporation owned by a foreign state than to a suit against the sovereign itself. The common law of 1791, which did not recognize actions against foreign sovereigns, could hardly have conceived of actions against insurers of foreign sovereigns. Even if we could view the action against Standard as one against a private party that the common law never held immune, we are bound by the Supreme Court's statement in *Ross v. Bernhard,* 1970, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729, that "[t]he Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action". *Id.* at 538, 90 S.Ct. at 738, 24 L.Ed.2d at 736. *See also* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2302 at 12 (1971); Rubin, Trial By Jury in Complex Cases: Voice of Liberty or Verdict by Confusion? 462 Annals 87, 92 (1982). And the only issue in this case is the extent of liability of a foreign sovereign, *see* note 13 *supra,* an issue that would not have been tried by a jury—would not have been tried at all—in 1791.

*Ross v. Bernhard* involved a stockholder derivative action against the directors and brokers of a closed-end investment company. Although the stockholder derivative action is considered an equitable remedy, the Supreme Court held that those issues in the case that were legal in nature, those that would have been tried to a jury had the corporation sued on its own behalf, must be tried to a jury in the derivative action. *Id.* at 538, 542, 90 S.Ct. at 738, 740, 24 L.Ed.2d at 736, 738. *See* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2302 at 24 (1971). Although *Ross* differs from the present case in several respects,[17]

---

**16.** Any argument that a negligence action against a foreign sovereign has a close analogue in common law tort does not avail. Such an argument, if accepted, would also apply to suits against the United States and would have required a different result in *McElrath,* where the claim at issue could have been likened to a common law contract claim.

**17.** In *Ross,* consideration of the nature of the issue rather than the overall claim resulted in a jury trial. And the Court noted that the corporation was a necessary party to the suit and the real party in interest. 396 U.S. at 538, 90 S.Ct. at 738, 24 L.Ed.2d at 736. These differences are not significant, however. We cannot decline to apply the test enunciated by the Supreme Court because it will lead to a different result in this case.

we believe its underlying principle is broad enough to apply here and renders the seventh amendment inapplicable. The nature of the issues in the basic cause of action governs the seventh amendment question; judicial or legislative innovations[18] allowing the inclusion or substitution of new parties do not.

In the absence of any constitutional or statutory requirement of a jury trial, courts sometimes grant a demand for a jury to promote important federal policies. *Byrd v. Blue Ridge Rural Electric Cooperative,* 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953; *see also* P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 738 (2d ed. 1973). And there is a federal policy favoring jury decisions of questions of fact. *Byrd,* 356 U.S. at 538, 78 S.Ct. at 901, 2 L.Ed.2d at 963. This policy, however, cannot prevail in the present case. Congress has expressed a strong policy favoring uniformity of decision in cases involving foreign sovereigns and has found that this policy is best served by trial without a jury. *See* p. 150, *supra.* Allowing the right to a jury to hinge on whether a particular state has a direct action statute would be especially offensive to this policy of uniformity.[19] It might also circumvent a congressional policy against subjecting foreign sovereigns to the vagaries of jury awards alien to their procedures. *See Ruggiero,* 639 F.2d

at 880.[20] We therefore conclude that neither the Constitution nor considerations of policy require a jury trial in this case.

## CONCLUSION

We conclude that 28 U.S.C. § 1332(a) does not vest the district courts with jurisdiction of a direct action against the insurer of a corporation owned by a foreign state, whether or not the insured is joined as a defendant. In deciding that Goar has no right to a jury trial, we need not determine whether 28 U.S.C. § 1330(a) is the sole basis for jurisdiction in this case. The only other possible basis, the federal maritime jurisdiction, carries with it no right to a jury trial. Whatever the basis for jurisdiction, neither the Constitution, nor statute, nor policy requires a jury trial in this case. The judgment of the district court is therefore AFFIRMED.

**18.** The stockholder derivative action was apparently a judicial innovation subsequent to 1791. It was not recognized in England before the early nineteenth century or in the United States before 1883. *See* Prunty, The Shareholders' Derivative Suit: Notes on its Derivation, 32 N.Y.U.L. Rev. 980 (1957).

**19.** It might be argued that the policy of uniformity is meant to benefit only sovereigns themselves, not their insurers. But whether a foreign sovereign or its insurer ultimately must suffer the loss of a judgment depends on whether the sovereign is insured, not on whether state law permits a direct action against the insurer. To allow jury trials in direct actions would therefore not be to treat sovereigns and insurers differently, but to treat the insurers of sovereigns in different cases differently, de-

pending on state law. Because satisfaction of a judgment by an insurer will often lead to increased premiums, the result is non-uniform treatment of foreign sovereigns.

**20.** One commentator has suggested that a policy of reciprocity is also implicated. Note, *Ruggiero v. Compania Peruna de Vapores and Rex v. Cia. Pervana de Vapores:* Jury Preclusion in Actions Against Foreign Sovereign-Owned Instrumentalities, 20 Colum. J. Transnat'l L. 198 (1981). Noting that the FSIA embodies a general principle of reciprocity that grants immunity only in instances where the United States would be immune in foreign courts, the author points out that reciprocity disfavors jury trials, since the United States is rarely subject to them abroad. *Id.* at 211.