**UNIVERSAL CONSOLIDATED COMPANIES, INC., Plaintiff–Appellant,**

v.

**BANK OF CHINA, Defendant–Appellee.**

No. 93–3528.

United States Court of Appeals, Sixth Circuit.

Argued April 28, 1994.

Decided Sept. 6, 1994.

Frederick J. McGavran (argued), Joseph J. Dehner (briefed), Frost & Jacobs, Cincinnati, OH, for plaintiff-appellant.

Henry N. Heuerman (argued and briefed), James L. Rogers, Eastman & Smith, Toledo, OH, Christopher Brady, Hollyer, Brady, Smith, Troxell, Barrett, Rocket, Hines & Mone, New York City, for defendant-appellee.

Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.

MERRITT, Chief Judge.

Plaintiff Universal Consolidated Companies, an Ohio corporation, sued the Bank of China, an instrumentality of the People's Republic of China, for more than $14 million in damages allegedly resulting from what Universal claimed was the Bank's anticipatory repudiation of an irrevocable documentary

letter of credit connected to Universal's construction of a steel mill in Tianjin, China. The District Court, which had jurisdiction pursuant to the Foreign Sovereign Immunities Act, Pub.L. No. 94–583, 90 Stat. 2891 (1976), rendered judgment for the Bank.

Universal chose not to challenge the judgment on the merits but appeals because the district court struck its jury demand. The Act does not allow trial by jury in such cases and Universal argues that this violates its Seventh Amendment[1] right to jury trial. However, five courts of appeal have found that the Act's nonjury provision does not violate the Seventh Amendment,[2] and we are unaware of any court which has held otherwise. We now join those circuits in this finding, for the reasons expressed by the Second Circuit in *Ruggiero v. Compania Peruana de Vapores,* 639 F.2d 872 (2d Cir. 1981).

Following the English tradition, American courts historically gave considerable deference to foreign sovereigns, not as a requirement of constitutional law but as an act of comity under customary international law. The absence of a constitutional provision on this point makes foreign sovereign immunity different from the sovereign immunity of the United States. The United States government is generally immune from suit in the federal courts except to the extent that Congress has waived that immunity. The trend after World War II was toward reduced deference to foreign sovereigns, particularly with regard to their "normal" commercial activities, which were increasingly thought to deserve no more protection from suit than the commercial activities of nonstate actors. The Foreign Sovereign Immunities Act codified this trend, declaring as its purpose to bring U.S. law into line with the international law principle that "states are not immune

from the jurisdiction of foreign courts insofar as their commercial activities are concerned[.]" 28 U.S.C. § 1602. *See generally Ruggiero,* 639 F.2d at 878ff; *Rex,* 660 F.2d at 67–68.

The Act confirms that foreign sovereigns are normally "immune from the jurisdiction of the courts of the United States and of the States," 28 U.S.C. § 1604, but sets out certain exceptions to this rule. Among these exceptions, the Act provides that foreign states "shall not be immune from the jurisdiction of" American courts in any case in which the foreign state waives immunity or acts as a normal commercial actor. 28 U.S.C. § 1605. Where subject to suit, a foreign state is "liable in the same manner and to the same extent as a private individual . . . but . . . shall not be liable for punitive damages[.]" 28 U.S.C. § 1606. The Act defines the term "foreign state" to include "an agency or instrumentality of a foreign state[.]" 28 U.S.C. § 1603. The Bank of China is a corporation wholly owned by the government of the People's Republic of China, and there is no dispute in this case that the Bank is therefore an "agency or instrumentality of a foreign state" as provided in § 1603. Nor is there any dispute that the Bank has both waived immunity and acted as a normal commercial actor.

Section 1330, the provision at the heart of this appeal, provides the basis for jurisdiction in the federal courts over actions with respect to which foreign states are not immune:

(a) The district courts shall have original jurisdiction without regard to amount in controversy *of any nonjury civil action* against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immuni-

---

1. "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]" U.S. Const. amend. VII.

2. *Ruggiero v. Compania Peruana de Vapores,* 639 F.2d 872, 875–79 (2d Cir.1981); *Rex v. Cia. Pervana De Vapores,* 660 F.2d 61, 63–64, 68 (3rd Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Williams v. Shipping Corp. of India,* 653 F.2d 875, 881–83 (4th

Cir.1981), *cert. denied,* 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982); *Goar v. Compania Peruana de Vapores,* 688 F.2d 417, 424–27 (5th Cir.1982); *Arango v. Guzman Travel Advisors,* 761 F.2d 1527, 1532–34 (11th Cir.1985), *cert. denied sub nom. Arango v. Companía Dominicana de Aviacion,* 474 U.S. 995, 106 S.Ct. 408, 88 L.Ed.2d 359 (1985). The defendant in each of these cases was an agency or instrumentality of a foreign state.

ty either under sections 1605–1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a) (emphasis added). While the language of § 1330 might have stated the rule more clearly, the Act's removal provision does explicitly require trial "by the court without jury," 28 U.S.C. § 1441(d), and all federal appellate courts which have considered the issue—including the Second, Third, Fourth, Fifth, and Eleventh Circuits—have held that jury trials are not available in suits brought under the Act. These courts have also held that the Act's jury prohibition does not violate the Seventh Amendment because jury trials were not available at common law in 1791 for suits against foreign sovereigns. *See supra* note 2. As Judge Friendly wrote, "[i]t is undisputed that a suit against a foreign state was unknown to the common law." *Ruggiero,* 639 F.2d at 878.

Our jurisprudence provides that the Seventh Amendment guarantees the right to a jury trial for (a) all actions for which jury trial was available at common law at the time of the amendment's adoption in 1791, and (b) all similar actions created by statute or judge since 1791. *Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law"); *see Goar,* 688 F.2d at 427.

The circuits mentioned above have uniformly found that (1) the most important characteristic of suits under the Act is that they are suits against foreign states, not that they are suits based in tort or contract or asking for damages or injunctive relief; (2) actions against foreign states were not known at common law in 1791 and are not analogous to any actions so known; and (3) therefore, the Seventh Amendment does not guarantee the right to a jury trial in actions under the Act. *See supra* note 2, *especially Ruggiero,* 639 F.2d at 878–81; *Goar,* 688 F.2d at 424–26.

Universal urges that this circuit reach the opposite result on two grounds. First, Universal argues that it is the common law nature of the claim asserted as a form of action (here, an action at law in contract for damages) and not the sovereign status of the defendant that determines the applicability of the Seventh Amendment. This argument fails because by making § 1330 the sole basis for jurisdiction over a foreign state, regardless of the nature of the action, Congress has provided that it is precisely the sovereign status of the defendant which determines the method in which the defendant may be sued. This provision does not run afoul of the Seventh Amendment for the reasons just reviewed.

For its second ground, Universal primarily gives two authorities for the proposition that a suit at common law could be maintained against a foreign state in 1791. First, *Solomons v. Bank of England,* 12 Rev.Rep. 341 (K.B. 1791), involved a suit for trover on a note issued by the Bank of England, which Universal describes as sharing with the Bank of China the quality of being "an agent or instrumentality" of a sovereign state. The Bank of China argues that the Bank of England was privately owned from its founding in 1694 until its nationalization in 1946, while Universal responds that government involvement in its financing made it an "instrumentality" of the English crown. Whatever else might be said about this case, however, it does not make plaintiff's point. As we have explained above, domestic sovereign immunity and foreign sovereign immunity are two separate concepts, the first based in constitutional law and the second in customary international law. *Solomons* involved a suit in the King's own common law courts against, in Universal's characterization, the English crown. Whatever *Solomons* stood for, it had nothing to do with the immunity of a *foreign* state at common law.

Second, Chief Justice Marshall in *The Schooner Exchange v. McFaddon,* 11 U.S. (7 Cranch) 116, 3 L.Ed. 287 (1812), refers to a comment by "Bynkershoek, a jurist of great reputation," concerning "several cases, in which courts have exercised jurisdiction over causes in which a foreign sovereign was

made a party defendant." *Id.* at 144. As the Bank of China points out, however, Bynkershoek was speaking about Dutch law, not the common law. Moreover, Justice Marshall did not endorse Bynkershoek's findings; *The Schooner Exchange* established in this country the doctrine of absolute immunity for foreign sovereigns.[3]

■ In sum, plaintiff has not made the kind of historical argument which would be necessary to cause this court to depart from the universal judicial agreement that "A suit against a foreign state was ... unknown to the common law of 1791[.]" *Ruggiero,* 639 F.2d at 880.

Since the Seventh Amendment does not guarantee the right to a jury trial in actions against a foreign state, Congress is free in the exercise of its foreign affairs powers to make a policy judgment about whether and how foreign states may be sued in American courts. Congress chose to permit these suits in certain circumstances but not to permit jury trials, from which Congress has generally exempted the United States as well. The legislative history of the Act shows that the nonjury provision was intended to promote "uniformity in decision, which is desirable since a disparate treatment of cases involving foreign governments may have adverse foreign relations consequences." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 13, [1976] U.S.Code Cong. & Ad.News 6604, 6611–12. The reasoning is obvious.[4] The conduct of foreign policy might be seriously affected if an American jury, moved by lingering memory over the attack on Pearl Harbor, displayed that bias in a lawsuit against an instrumentality of the Japanese government.

Likewise, the anger generated in this country by the deaths at Tienanmen might easily bias a jury deliberating in a suit by an American construction company against the Bank of China. This is a policy judgment wholly within Congress's power:

> By reason of its authority over foreign commerce and foreign relations, Congress has the undisputed power to decide, as a matter of federal law, whether and under what circumstances foreign nations should be amenable to suit in the United States. Actions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States, and the primacy of federal concerns is evident.

*Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983).

■ Universal argues in the alternative that even if it cannot have a jury trial under the Act, and even if the Act is constitutional in that regard, it should still be able to demand a jury trial because the Bank waived immunity and thereby waived application of the Act and its nonjury provision. In this characterization, the district court had authority to hear the case under its diversity jurisdiction as set forth in 28 U.S.C. § 1332. Universal contends that this made the suit a garden-variety action for damages in breach of contract, the sort of suit for which the Seventh Amendment classically preserves the right to jury trial.

While it is true that the Bank did waive sovereign immunity, this is irrelevant to the court's jurisdiction. First, the Act amended 28 U.S.C. § 1332(a) to eliminate actions against foreign states from the scope of diversity jurisdiction. *See Ruggiero,* 639 F.2d

---

**3.** Chief Justice Marshall wrote that since all sovereigns possess "equal rights and equal independence" under international law, a sovereign enters the territory of a friendly foreign government "in the confidence that the immunities belonging to his independent sovereign nation, though not expressly stipulated, are reserved by implication, and will be extended to him." *Id.* at 136–37. *See also Rex,* 660 F.2d at 67 (the *Schooner* case "announced the doctrine of absolute jurisdictional immunity for foreign sovereigns"); *Williams,* 653 F.2d at 877.

**4.** As Judge Friendly wrote,
Congress could legitimately consider that a partial withdrawal of sovereign immunity from foreign states would interfere with United States' international relations unless such states were accorded protection similar to what it had given itself. Foreign countries can hardly object to the United States' subjecting them to trial by a judge in commercial cases when the United States itself is subject to the same sort of trial in its own courts and in theirs. Subjection to trial by jury, especially with the restraints on review of jury findings also imposed by the Seventh Amendment, would be a different matter, especially since the great majority of countries do not use a civil jury.
*Ruggiero,* 639 F.2d at 880.

at 873–75, 877. Second, Congress provided in § 1604 that foreign states and their instrumentalities are normally immune from suit in American courts, except that under § 1330 the federal district courts have original jurisdiction to entertain a claim falling under any of the exceptions articulated in §§ 1605–1607. Section 1330 therefore provides the sole basis for jurisdiction over a foreign state. *Saudi Arabia v. Nelson,* —— U.S. ——, ——, 113 S.Ct. 1471, 1476, 123 L.Ed.2d 47 (1993); *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434–35, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989); *Verlinden,* 461 U.S. at 493, 103 S.Ct. at 1971; *Ruggiero,* 639 F.2d at 876. Waiver of immunity under § 1605(a)(1) is just one of several coequal *exceptions* to sovereign immunity which satisfy the jurisdictional requirements of § 1330 and *invoke* the Act—not a means for the suit to escape from the arena of the Act.

Put another way, it is hornbook law that parties may not waive into or consent to subject matter jurisdiction which a federal court does not properly have by operation of Constitution and Congress. *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) ("no action of the parties can confer subject-matter jurisdiction upon a federal court"). In a sense, the waiver exception to foreign sovereign immunity is the only instance in American law in which a party *can* waive into jurisdiction, but it only works in one direction: the Bank can waive into the Act, but not out of the Act and into diversity or federal question jurisdiction. More accurately, since Congress pursuant to its constitutional powers has explicitly provided this mechanism it is not actually an exception to the rule stated above. And since Congress has legislated that the Act is the sole means by which the federal courts can have jurisdiction over the Bank, the nonjury provision of that jurisdictional requirement is mandatory.

For the reasons stated above, we therefore AFFIRM the district court's denial of plaintiff's request for a jury trial in this case.